Argued and submitted January 13, reversed and remanded June 6, reconsideration denied July 27, petition for review allowed September 18, 1984 (297 Or 824)

**TREBESCH,**
*Petitioner,*

*v.*

**EMPLOYMENT DIVISION,**
*Respondent.*

**(EAB 83-AB-586-A; CA A28498)**

683 P2d 1018

Michael H. Marcus, Portland, argued the cause for petitioner. With him on the briefs was Terri K. Borchers, Portland.

Michael D. Reynolds, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, James E. Mountain, Jr., Solicitor General, and Judith Tegger, Assistant Attorney General, Salem.

Before Gillette, Presiding Judge, Joseph, Chief Judge, and Young, Judge.

JOSEPH, C. J.

## JOSEPH, C. J.

Petitioner appeals from an Employment Appeals Board order denying his claim for extended unemployment compensation benefits. We reverse and remand for reconsideration under an appropriate rule.

ORS 657.325(6)(b) provides:

"(6)   * * * [A]n individual shall be ineligible for payment of extended benefits * * * if the assistant director finds that during such week:

"* * * * *

"(b)   The individual failed to actively engage in seeking work as prescribed under section (10) of this section."

ORS 657.325(10) provides:

"* * * [A]n individual shall be treated as actively engaged in seeking work during any week if:

"(a)   The individual has engaged in a systematic and sustained effort to obtain work during such week; and

"(b)   The individual furnishes tangible evidence of engaging in such effort during such week."

Petitioner's claim was denied on the basis of a conclusion that he did not actively seek work as required by the statute. He argues that the language "systematic and sustained effort to obtain work" in ORS 657.325(10)(a) represents a value judgment that the legislature has only indicated and that requires agency interpretation in order to flesh out the legislature's meaning. He contends that an interpretation must be made as an administrative rule and that "without a rule, the Division cannot disqualify him from extended unemployment benefits."

The substantive parts of the administrative decision are set out in the margin.[1] The "CONCLUSION AND

---

[1]

"FINDINGS OF FACT:

"1. You claimed benefits for the period November 28, 1982 through December 11, 1982.

"2. During this period you did not make a systematic and sustained effort to obtain work.

REASONS" part is certainly conclusory, but by no stretch of the imagination could it be said to reveal any reasoning. In fact, in substance it is merely a reiteration of the second finding of fact. The referee adopted the decision *in toto,* and so did EAB. One EAB member expressed his concern that this court would not view the decision favorably, because the Division has not adopted a rule to define the key term. He concurred in the decision, saying:

> "* * * However, the claimant did not raise the issue in her [sic] appeal to us and I am therefore reluctant to allow benefits merely because of the lack of a rule."

Two frequently appearing administrative law problems seem to coalesce in this case. The Supreme Court and this court have iterated and reiterated, time and time again, that an agency deciding a contested case must demonstrate for the contestants and this court that its findings lead to a *reasoned* conclusion. *See, e.g., Springfield Education Assn. v. School Dist.,* 290 Or 217, 228, 621 P2d 547 (1980); *Ross v. Springfield School Dist. No. 19,* 294 Or 357, 657 P2d 188 (1982); *Spray v. Bd. of Medical Examiners,* 50 Or App 311, 624 P2d 125, *modified* 51 Or App 773, 627 P2d 25, *rev den* 291 Or 117 (1981); *Home Plate, Inc. v. OLCC,* 20 Or App 188, 190, 530 P2d 862 (1975). Moreover, by fair intendment, the Administrative Procedures Act directs that that be done. ORS 183.470.[2]

The absence of a demonstrably reasoned conclusion would ordinarily require a reconsideration by EAB. However, claimant has not challenged the sufficiency of the decision on that ground. His only contention is that the agency must

---

"3. On November 29, 1982 you signed Form 385-X certifying that you understood the work search requirements.

"4. Your only contacts were your union and two employers.

"5. You have shown these three contacts each week since September 1982.

"CONCLUSION AND REASONS: Your work search was not a systematic and sustained effort to obtain employment. You did not actively seek work."

[2] Not even by going behind the findings to examine the record can reasoning be discerned. The statement of extended benefits eligibility given the claimant (Form 385-X) says in part: "[U]nion attachment will no longer take the place of an active work search." The findings that claimant's "only contacts were your union and two employers" during the relevant weeks by themselves hardly support a conclusion that claimant failed to conduct "a systematic and sustained search for work" just because the union was one of the resources that were looked to by him.

make a rule[3] defining "systematic and sustained effort to obtain work" before it can adjudicate his claim because, he says, the term is one of "delegation" within the *Springfield* trichotomy and, therefore, "requires further policy determination by the agency."

Claimant's contention is a bit wide of the mark. In the first place, it is not at all clear that the second ("inexact terms") and third ("terms of delegation") categories are true archetypes with compelled consequences. *See Oregon Fire/ Police Retirement Committee v. Oregon Public Employes' Retirement Board,* 296 Or 464, 466, 676 P2d 878 (1984) (Linde, J., dissenting). More importantly, even assuming the validity of the categories, the Supreme Court has never made clear when pre-adjudication rulemaking is required. For example, *Megdal v. Board of Dental Examiners,* 288 Or 293, 605 P2d 273 (1980), can be read to suggest that rulemaking is required whenever an agency has delegated to it a range of discretion. That interpretation has been expressly rejected. *Ross v. Springfield School Dist. No. 19, supra,* 294 Or at 367-68.[4] Nonetheless, *Megdal does* say (288 Or at 304-05) that rulemaking has two distinct functions: "Providing notice of the agency's view of [a term's] proper application" and as a mechanism by which "to exercise [legislatively delegated] responsibility" to ascertain what construct the agency will place on the term in the exercise of its discretion. It then recognizes (288 Or at 313-15) that which of those functions is exercised by the agency has only the effect of determining the scope of judicial review. The opinion concludes that, in the instance before it, the subject of the agency action was entitled to relief, because the "lack of comprehensive and channeling criteria that the rules [that the agency is authorized to adopt] were meant to provide," 288 Or at 320-21, resulted in an *ad hoc* application of the statute, which was impermissible.

---

[3] As the Division has done in defining "actively seeking work." OAR 471-30-036(4); *see Oliver v. Employment Division,* 40 Or App 487, 595 P2d 1252 (1979).

[4] In *In re Geurts,* 290 Or 241, 248, 620 P2d 1373 (1980), *Megdal* is cited ambiguously (i.e., with a "cf.") for this proposition: "However, if noncooperation itself is to be made a ground for imposing a [lawyer] disciplinary penalty, the rules of professional discipline ought to give fair notice of the terms and limits of that obligation." We take that to be some sort of *inclusio unis exclusio alterius* idea that is not involved here.

Neither *McPherson v. Employment Division,* 285 Or 541, 591 P2d 1381 (1979), nor *Springfield Education Assn. v. School Dist, supra,* has much direct bearing on the issue here, for those cases are directed at questions of authority and scope of review. There can be no doubt about the Division's general authority to adopt rules, ORS 657.610(1), and we need apply the *McPherson-Springfield* analysis no further than to determine whether the term "systematic and sustained effort to obtain work" is of such precise meaning as to require only fact-finding to apply it.

The basic standard for unemployment compensation benefits is that an individual be, among other things, "actively seeking * * * suitable work." ORS 657.155(1)(c). In 1981 Congress imposed additional eligibility requirements for unemployed persons whose regular benefits have been exhausted and who seek extended benefits. Congress made conformity with those requirements necessary for certification of the state law by the Secretary of Labor. 26 USC §§ 3304(a)(1), 3304(a)(11). Certification is necessary to protect a state's eligibility for federal funding of the unemployment compensation system. ORS 657.325 was enacted by Or Laws 1981, ch 46, § 2, consistently with the federal statute. Given that the Division had seen fit to amplify "actively seeking work" by rule under the statute as it existed before the 1981 amendment, that the only intent we can impute to the 1981 Oregon legislature is to protect this state's participation in the federal program by adopting the federal law and that all we know about Congress' intent is that something more than the pre-1981 "actively seeking work" effort required for regular benefits is required for extended benefits, we conclude that the term is so imprecise as to require more than mere fact-finding for its application.

The agency here found the facts as to what the claimant did and concluded that that was not enough to constitute a "systematic and sustained effort to obtain work." In *Oliver v. Employment Division,* 40 Or App 487, 595 P2d 1252 (1979), decided after *McPherson,* we went back to *Marbet v. Portland Gen. Elec.,* 277 Or 447, 561 P2d 154 (1977), and derived from its language the proposition that "it would be a violation of the Administrative Procedures Act for an agency to make policy on [terms requiring more than fact-finding for their application] on a purely case-by-case basis." 40 Or App

at 493. We cited our earlier cases to the same effect: *Sun Ray Dairy v. OLCC,* 16 Or App 63, 517 P2d 289 (1973); *McCann v. OLCC,* 27 Or App 487, 556 P2d 973 (1976), *rev den* (1977). We drew the same conclusion from ORS 657.610(1) and from the structure of the unemployment compensation claims processing procedures under ORS 657.265. Ultimately, though, we concluded that the requirement that a rule be made rests on the necessities for uniformity of direction in an agency with several operating units throughout the state and for reasonable specificity of direction for those by whom and to whom the statute is to be applied.

Form 385-X told claimant that looking to his union for assistance in finding work would not be enough. When he contacted his union *and* two employers repeatedly, he was told (after the facts) that he had not done enough. We have no way of knowing what he would have been told had he sought advice from agency personnel before the facts. We do know that there would have been no basis for an answer from the agency but the statutory term itself and the purely negative words of Form 385-X.[5] The agency's responsibility is broader than that. Although the agency cannot be required to fix a definition that is precisely decisive in every case, it does have the responsibility to give fair notice of what the term "systematic and sustained effort to obtain work" means.

Reversed and remanded.

---

[5] We need not characterize the legal nature of the warnings on the form.