Argued and submitted November 8, 1984, decision of Court of Appeals affirmed, and decision of Employment Appeals Board reversed and remanded November 26, 1985, reconsideration denied January 28, 1986

TREBESCH,
*Respondent on Review,*

*v.*

EMPLOYMENT DIVISION,
*Petitioner on Review.*

(EAB 83-AB-586A; CA A28498; SC S30900)

710 P2d 136

Philip Schradle, Assistant Attorney General, Salem, argued the cause for petitioner on review. With him on the brief were Dave Frohnmayer, Attorney General, James E. Mountain, Jr., Solicitor General, Michael D. Reynolds, Assistant Attorney General, and Judith Tegger, Assistant Attorney General, Salem.

Michael Marcus, Legal Aid Service, Portland, argued the cause for respondent on review. With him on the brief was Terri K. Borchers, Legal Aid Service, Portland.

ROBERTS, J.

### ROBERTS, J.

The issue is whether the Assistant Director of the Employment Division was required to promulgate a rule defining the statutory phrase "systematic and sustained effort to obtain work" before it could deny claimant extended unemployment benefits for failing to fulfill the statutory requirement.

An individual is, by statute, ineligible for extended unemployment benefits if the individual failed "actively [to] engage in seeking work." ORS 657.325(6)(b). An individual, by statute, will be treated as "actively engaged in seeking work" if "[t]he individual has engaged in a systematic and sustained effort to obtain work," and furnishes tangible proof of such effort. ORS 657.325(10).

The initial decisionmaker in the Employment Division denied benefits. The administrative decision contained a "Conclusions and Reasons" section which stated: "Your work search was not a systematic and sustained effort to obtain employment. You did not actively seek work." Beyond this recitation of the statutory language no rationale appears. Finding of Fact Number 4, which provides the only clue to the decision, states: "Your only contacts were your union and two employers." The referee adopted the finding and conclusions of the initial decisionmaker and affirmed the denial of benefits. The Employment Appeals Board (EAB) affirmed as well and adopted the referee's decision. The EAB reached its decision over one member's dissent. The dissenter would have allowed benefits because the assistant director of the Employment Division had not promulgated a rule defining the statutory term.[1]

The Court of Appeals accurately identified an "absence of a demonstrably reasoned conclusion" in the EAB's order, 68 Or App 464, 467, 683 P2d 1018 (1984), but it

---

[1] In other decisions, the EAB has adopted the dissenter's position to reverse decisions denying benefits. For example, in *Patterson v. Employment Division,* Appeals Board Decision 83-AB-990, two of the three board members wrote: "It is the responsibility of the Employment Division to promulgate such a rule and this Board may not infringe upon its rule-making authority. Absent such a rule, a denial of benefits is not appropriate." *See Brown v. Employment Division,* Appeals Board Decision 83-AB-728; *Hoffman v. Employment Division,* Appeals Board Decision 83-AB-784.

did not decide the case on this ground.[2] The Court of Appeals reversed and remanded the case, stating that the agency had the "responsibility to give fair notice of what the term 'systematic and sustained effort to obtain work' means." 68 Or App at 470.

1. *Determining when rulemaking is required.*

■      We are called upon to consider whether the responsible officials in the Employment Division are required to promulgate rules in advance of adjudication. The answer is not found in the constitution, *Anderson v. Peden,* 284 Or 313, 327, 587 P2d 59 (1978),[3] or in a common law, that is, a judge-made law of administrative agencies; nor may it be divined from the state administrative procedures act, ORS 183.310 to 183.725, which does no more than set uniform procedures for state agencies. Rather, the answer is a matter of statutory interpretation, the relevant statutes being those regulating the particular agency whose action is challenged. We seek to derive the legislature's intent from an analysis of the statutes by which a particular agency operates. The authorizing statutes will specify whether rulemaking or adjudication authority, or both, are delegated to the agency and will indicate the agency's tasks, the breadth of the agency's discretion to carry out these tasks, and the process by which they are to be accomplished. Judicial decisions may present the methodology by which we examine the question of required or permissive agency rulemaking. Nonetheless, only the statutes regulating a particular agency will provide the answer.

---

[2] The Court of Appeals thought that claimant had not challenged the decision on this ground. In fact claimant had, albeit briefly. Claimant's Brief at 16. Claimant also raised the issue before this court at oral argument.

[3] In *Anderson v. Peden,* 284 Or 313, 587 P2d 59 (1978), we spoke generally to the constitutional requirements for fair notice in the application of civil laws. We stated: "Adoption of more meaningful criteria * * * by general rulemaking in advance of a concrete case may well be the best safeguard against the risk of inconsistent and *ad hominem* decisions, but it does not necessarily follow that such a procedural requirement can be deduced directly from the constitutional obligation to avoid favoritism." 284 Or at 327.

Rulemaking may avoid a claim of ad hoc decisionmaking in violation of Article I, section 20, of the Oregon Constitution, such as was raised in *City of Salem v. Bruner,* 299 Or 262, 702 P2d 70 (1985); *State v. Freeland,* 295 Or 367, 667 P2d 509 (1983); *State v. Clark,* 291 Or 231, 630 P2d 810 (1981); *State v. Edmonson,* 291 Or 251, 630 P2d 822 (1981). That constitutional provision alone, however, does not compel rulemaking.

The arguments of the parties in this case illustrate a common confusion. The parties frame their positions in terms of judicial decisions rather than the statutes regulating administration of the unemployment insurance laws, ORS chapter 657. As a further complication, the parties cite four of this court's decisions interchangeably, though the cases addressed different concerns. Two considered the scope of judicial review of agency action, *McPherson v. Employment Division,* 285 Or 541, 591 P2d 1381 (1979) and *Springfield Education Assn. v. School Dist.,* 290 Or 217, 621 P2d 547 (1980). The third, of direct relevance to the instant question, addressed the requirement for agency rulemaking in advance of adjudication, *Megdal v. Board of Dental Examiners,* 288 Or 293, 605 P2d 273 (1980). The fourth case briefly addressed the need for prior rulemaking, *Ross v. Springfield School Dist.,* 294 Or 357, 657 P2d 188 (1982).

The assistant director of the Employment Division apparently believes that *Springfield Education Assn.* resolved the issue whether prior rulemaking was required. *Springfield* characterized statutory terms to determine the appropriate scope of judicial review of an agency action. The Springfield analysis distinguished agency fact finding, which is reviewed for substantial evidence, ORS 183.482(8)(c), from agency interpretation of law, which is reviewed for errors of law, ORS 183.482(8)(a), and agency policymaking, which is reviewed to ensure that the agency has not trangressed the limits of its discretionary authority, or of another administrative statutory or constitutional provision, ORS 183.482(8)(b);[4] *Spring-*

---

[4] These provisions of the Administrative Procedures Act regulating judicial review provide:

"(8)(a) The court may affirm, reverse or remand the order. If the court finds that the agency has erroneously interpreted a provision of law and that a correct interpretation compels a particular action, it shall:

"(A) Set aside or modify the order; or

"(B) Remand the case to the agency for further action under a correct interpretation of the provision of law.

"(b) The court shall remand the order to the agency if it finds the agency's exercise of discretion to be:

"(A) Outside the range of discretion delegated to the agency by law;

"(B) Inconsistent with an agency rule, an officially stated agency position, or a prior agency practice, if the inconsistency is not explained by the

*field Education Assn. v. School Dist., supra.*

The assistant director cites language from *Springfield* that an agency may interpret a statutory term either by rule or by order in a contested case. The assistant director argues that the option to interpret by rule or adjudication lies with the agency. Claimant argues that the term "systematic and sustained effort to obtain work" is "unavoidably delegative," meaning, we assume, that the term delegates policymaking responsibility, not a more restrictive interpretive responsibility. Claimant's position is that rulemaking is required before application of any policymaking term.

■ The Court of Appeals here correctly discerned that categorizing a statutory term for purposes of the scope of judicial review does not by itself compel a particular consequence with regard to rulemaking. The character of a statutory term does not necessarily imply anything about whether an agency needs to make rules.

In *Megdal v. Board of Dental Examiners, supra,* we held that the breadth of potential administrative choice to develop and execute the term "unprofessional conduct," together with the agency's authority to make rules on that topic and the similarity of the agency with other licensing boards for whom rulemaking was mandatory, indicated a legislative intent that the standard must be explained by rules. We examined the character of the statutory term itself, the rulemaking authority delegated to the agency and we compared the agency's task and structure with comparable agencies to reach our conclusion.

In *Ross v. Springfield School Dist., supra,* we briefly addressed whether rulemaking was required before the Fair Dismissal Appeals Board (FDAB) could interpret a statutory term by order in a contested case. We held that prior rulemaking was not required both because the term at issue involved interpretation rather than wide policymaking discretion and because the FDAB's enabling legislation did not otherwise

---

agency; or

"(C) Otherwise in violation of a constitutional or statutory provision.

"(c) The court shall set aside or remand the order if it finds that the order is not supported by substantial evidence in the record." ORS 183.482(8).

indicate a legislative intent to require prior rulemaking. The FDAB only exists as a group of 20 persons from whom hearing panels are drawn to decide individual contested cases. ORS 342.930, 342.905(3). It is not structured to promulgate general rules. The statutes give FDAB no substantive rulemaking authority. It may only promulgate procedural rules for the conduct of its hearings. ORS 342.915(2).

*Megdal* does not mean that all terms delegating policymaking discretion can be applied only after rulemaking. Nor does *Ross* mean that terms delegating interpretive responsibility may always be applied as the agency chooses, either by rule or by adjudication. Both cases address only the requirement for rulemaking in the individual agencies at issue in the cases.

■ It is always possible for the legislature explicitly to require an agency to define any type of statutory term by rulemaking. *See, e.g., Marbet v. Portland Gen. Elect.,* 277 Or 447, 458, 561 P2d 154 (1977). In the absence of an explicit directive, the breadth and kind of responsibility delegated to the agency by the statutory term (fact-finding, applying an ambiguous law, or developing policy) will be one, but not a dispositive, factor which may indicate an implicit directive from the legislature for rulemaking. In addition, the tasks the agency is responsible for accomplishing, and the structure by which the agency performs its mandated tasks, all of which are specified in an agency's authorizing legislation, must be examined as a whole in order to discern the legislature's intent with regard to rulemaking.

In *McPherson v. Employment Division, supra,* a case considering the division of interpretive responsibility between the officials of the Employment Division and the judiciary, we examined the relationships among the assistant director, the Employment Division and the EAB. In that case, we identified the assistant director as the official responsible for interpreting the statutes which regulate the division. 285 Or at 551.

Once again, we consider these relationships. First, we examine the character of the statutory term in dispute. Then, we address the authority delegated and the tasks assigned to the agencies. Finally, we discuss the structure by which the agencies execute their tasks.

## 2. *Character of the term.*

Policymaking terms are those which empower the agency to develop and expound its own vision of how a law or a scheme of regulation should be applied. With regard to the phrase here at issue, "actively seeking employment," the legislature has already made its policy clear. Eligibility for *regular* unemployment benefits is set forth in ORS 657.155(1)(c) and defined by administrative rule, OAR 471-30-036(4).[5] Eligibility for *extended* unemployment benefits will be met if the individual "[h]as satisfied the requirements of this chapter for the receipt of regular benefits that are applicable to individuals claiming extended benefits." ORS 657.325(1)(b). However, an individual may become ineligible for extended unemployment benefits if "[t]he individual failed to actively engage in seeking work as prescribed under subsection (1) of this section." ORS 657.325(6)(b). Subsection (10) provides:

> "For the purposes of paragraph (b) of subsection (6) of this section, an individual shall be treated as actively engaged in seeking work during any week if:
>
> "(a)   The individual has engaged in a systematic and sustained effort to obtain work during such week; and
>
> "(b)   The individual furnishes tangible evidence of engaging in such effort during such week."

These eligibility requirements for extended unemployment benefits were amended in 1981, Oregon Laws 1981, chapter 46, section 2, to ensure consistency with more stringent requirements imposed by federal law, a consistency necessary for the state's eligibility for federal funding of the unemployment compensation system. 26 USC § 3304(a)(11)

---

[5] OAR 471-30-036(4) provides:

"For purposes of ORS 657.155(1)(c) an individual is actively seeking work when doing what an ordinary and reasonable person would do to return to work at the earliest opportunity. In determining whether an individual is conducting an active search for work, the Employment Division may consider among other factors, length of unemployment, economic conditions in the individual's labor market and prospective job openings, weather conditions affecting occupations or industries, seasonal aspects of the individual's regular occupation, expected date of return to work with regular employer or in regular occupation, seniority status of individual, registration with a union hiring hall and normal practices for obtaining the type of work which the individual is seeking pursuant to section (1) of this rule."

(1979), note to 26 USC § 3304, section 202(a)(3)(A) and (E) of the Federal-State Extended Unemployment Compensation Act of 1970, *as amended by* Pub L 96-499, Title X, § 1022(a), 1024(a). The language of ORS 657.325 now matches the federal statute. The agency's responsibility is to explain the degree to which a "systematic and sustained effort to obtain work" varies from an "active" job search, as informed by legislative history. The question when an individual pursues employment with a "systematic and sustained effort" is one of interpretation, not policymaking.

3. *Division of authority in the administration of unemployment insurance laws.*

ORS chapter 657, the unemployment insurance law, makes provision for two agencies, each with some responsibility relative to the chapter. The EAB is an adjudicatory body responsible for reviewing decisions of referees. ORS 657.690, 657.275. The EAB may make procedural rules for the conduct of its own proceedings, ORS 657.685(7), but it has no substantive rulemaking authority.

The Employment Division consists of the "assistant director and such other personnel as may be necessary for the efficient performance of the functions of the division." ORS 657.601. "Such other personnel" includes the initial decisionmakers and referees, who make decisions on the grant or denial of unemployment benefits.

The assistant director supervises and controls the Employment Division, ORS 657.608, and is responsible for interpreting and developing the unemployment insurance laws. The assistant director is authorized to "determine all questions of general policy and promulgate rules and regulations and be responsible for the administration of this chapter." ORS 657.610. Although the initial decisionmakers, the referees and the EAB are authorized to issue orders, the assistant director's powers are broader. The assistant director is the only entity with both adjudicative authority and substantive rulemaking power. The assistant director is the "agency" for purposes of rulemaking.[6]

---

[6] ORS 183.310(1) defines an agency as "any state board, commission, department, or division thereof, or officer authorized by law to make rules or to issue orders * * *."

Benefit decisions are made by employment division employes in local offices around the state. These decision-makers are required to apply the statutory requirements to the facts that come before them. They interpret the law in the process of applying it.

There is no doubt that the legislature intended the term "systematic and sustained effort to obtain work" to be applied uniformly throughout the state. The statutes lodge rulemaking and policymaking responsibility with one official, the assistant director, who is also generally "responsible for the administration of this chapter." The process for decision-making is decentralized. Nonetheless, a consistent interpretation of the law is contemplated by the statute, and the official responsible is the assistant director. The uniform application of the law can only be met when employes at all levels operate with the same understanding of the terms. This assumes that the assistant director will communicate in some way with initial decisionmakers and referees in order to ensure uniform application of the law.

Agencies generally may express their interpretation of the laws they are charged with administering either by adjudication or by rulemaking, or both. Adjudication results in orders, which are defined as "any agency action expressed orally or in writing directed to a named person or named persons, other than employes, officers or members of an agency" and include "any agency determination or decision issued in connection with a contested case proceeding." ORS 183.310(5)(a). Rulemaking results in rules, defined as "any agency directive, standard, regulation or statement of general applicability that implements, interprets or prescribes law or policy, or describes the procedure or practice requirements of any agency." ORS 183.310(8). The term does not include "internal management directives, regulations or statements which do not substantially affect the interests of the public." ORS 183.310(8). The question is how the assistant director of the Employment Division must communicate that official's interpretation of the statute.

4. *Agency Structure.*

The initial determination of eligibility for a claim of benefits is made by "an authorized representative designated by the assistant director." This representative is authorized to

gather evidence, calculate the amount and duration of benefits, if any, and issue a final order. ORS 657.265. The claimant or the employer may appeal this decision to a referee, also designated by the assistant director, and receive a hearing and review of the decision. ORS 657.270(1). It appears that the assistant director may be a party to this hearing, ORS 657.270(3), OAR 471-10-005. The parties, including the assistant director, may seek review of the referee's decision before the EAB, ORS 657.275, OAR 472-20-005, and may further appeal the Board's decision to the Court of Appeals. ORS 657.282, 183.482.

The assistant director has comprehensive rulemaking powers. If rulemaking were the only method by which the assistant director could disseminate interpretations of the law, of necessity that official would be required, to promulgate rules before application of statutory terms in individual cases. However, the assistant director also has some form of adjudicatory authority. Depending upon how comprehensive the adjudicatory power is, the legislature may have envisioned that interpretations of law by orders in contested cases would provide an alternative to interpretations by rules.

The assistant director's adjudicatory powers, in the context of unemployment benefits decisions, appear in ORS 657.290.[7] This statute provides:

"(1) The assistant director, upon motion of the director or upon application of any party to a claim for benefits, may at any time reconsider any final decision under this chapter. Reconsideration may occur when there is evidence of:

(a) Errors of computation;

(b) Clerical errors;

(c) Misinformation provided a party by the division;

(d) Facts not previously known to the division; or

---

[7] The assistant director's quasi-judicial powers in administrative hearings are enumerated in ORS 657.630. The assistant director also conducts hearings with regard to determinations of employers' tax rates, ORS 657.485. The statutes provide a hearing, review and appeal procedure from this determination, and also allow the assistant director to "reconsider a determination of employer subjectivity, tax rate or tax assessment irrespective of whether it has become final." ORS 657.676(1). This reconsideration decision, like that involving unemployment benefits is subject to hearing, review and appeal. ORS 657.676(2).

(e) Errors caused by misapplication of law by the division.

"(2) Such reconsideration shall be accomplished by the assistant director or any employe the assistant director may designate for the purpose, in accordance with such regulations as the assistant director may prescribe, and may include the making of a new decision which, if made, shall award, deny, terminate, continue, increase or decrease benefits to the extent found necessary and appropriate for the correction of previous error respecting such benefits. However, any such new decision shall be subject to hearing, review and appeal in accordance with ORS 657.265 to 657.282.

"* * * * *."

The statute gives the assistant director, or administrator, as this official is called in the division's administrative rules, authority to "reconsider any final decision under this chapter." ORS 657.290(1). The assistant director's authority on reconsideration includes "the making of a new decision which, if made, shall award, deny, terminate, continue, increase or decrease benefits to the extent found necessary and appropriate for the correction of previous error respecting such benefits." ORS 657.290(2). That subsection also provides that "any such decision shall be subject to hearing, review and appeal in accordance with ORS 657.265 [hearing before referee] to 657.282 [judicial review of decisions of the EAB.]"

Reconsideration is appropriate where there is evidence of: "Errors of computation; * * * [c]lerical errors; * * * [m]isinformation provided a party by the division; * * * [f]acts not previously known to the division or * * * [e]rrors caused by misapplication of law by the division." ORS 657.290(1)(a)-(e). This last criterion for reconsideration may provide a vehicle by which the assistant director could communicate that official's interpretation of the law to the decisionmakers in the Employment Division.

The assistant director has addressed this adjudicative rule. OAR 471-30-055 provides in pertinent part:

"(2) If the Administrator finds, *as new facts not previously known to the Administrator or the designees* specified in section (1) of this rule, that a claimant or an employing unit has suffered or would suffer substantial adverse effect because of:

"(a) Misinformation provided to such party by an employe of the Employment Division; or

"(b) Improper application of Employment Division Law or administrative rules by an employe of the Employment Division, the Administrator, or one of the designees specified in section (1) of this rule, may take appropriate action to restore to the injured party all rights and benefits which were improperly denied." (Emphasis supplied.)

The rule is ambiguous. On the one hand, it may mean that reconsideration is only appropriate when new facts not previously known to the administrator come to light, an interpretation that allows a scope of review more limited than that which appears on the face of the statute. The parties may have assumed that reconsideration is so limited. On the other hand, the requirement for "new facts not previously known" as it refers to the "[i]mproper application of Employment Division Law or administrative rules" may mean only that there must be a claim that a law or rule was improperly applied and that this misapplication is itself the new "fact" that would trigger reconsideration.

It appears that the statutory provision for reconsideration for "[e]rrors caused by misapplication of law by the division" contemplates interpretation of law apart from review for factual inaccuracies and arithmetic miscalculations. If this is so, then we can discern no clear indication in the legislation that rulemaking is required. Interpretation of statutory terms by orders in contested cases is an adequate alternative to rules. Both are capable of achieving a uniform application of the law. The assistant director could elaborate the statutory term at issue in this case and similar terms, and address characteristic problems in the application of those terms, by a series of well articulated opinions not limited to the narrow facts of a case, which are designed to give guidance to agency decisionmakers.[8]

The statutes indicate that the assistant director has the option to promulgate rules or issue orders. The assistant director does not have the choice to do nothing to provide for consistent interpretation and application of the broad terms

---

[8] We do not here attempt to reconcile this apparent comprehensive review power with ORS 657.220(3), 657.275 and OAR 471-10-005, 471-20-005, which indicate that the assistant director may be a party before the referee and the EAB.

of the statute. Some notice of required job search efforts both to those who apply the term and those, like claimant, to whom it is applied, is required when a large volume of frequently recurring decisions is made by Employment Division employes throughout the state. In the absence of rules or reasoned opinions in individual cases, the first level decision-makers must embark upon local, autonomous definitions of the statute in place of a uniform statewide interpretation articulated by the responsible Employment Division official. The statutes contemplate that those applying the term will have notice of a uniform standard for required job search efforts, and that those standards will be set by the assistant director of the Employment Division, not referees or even the EAB. ORS 657.610, *McPherson v. Employment Division, supra,* 286 Or at 551.

■ The assistant director has not provided an interpretation of the term "actively seeking work" in the context of extended benefits decisions either by rule or by opinion in a contested case. We remand this case to the EAB with the direction that that body ensure that claimant has the opportunity to seek reconsideration. We assume without deciding that the assistant director's power to reconsider "any final order" includes the EAB's decision. It may be that the assistant director does not perceive himself to have comprehensive review powers to consider interpretations of law. If such is the case, the term must be interpreted by rule and the absence of a rule before application to this claimant would compel reversal. On the other hand, it may be that OAR 471-30-055 was intended to permit comprehensive review for interpretations of law, in which case the assistant director may address the standards required for an adequate work search by order on reconsideration in light of the facts of this case.

The decision of the Court of Appeals is affirmed. The decision of the EAB is reversed and remanded.