Argued and submitted January 6, affirmed September 10, reconsideration denied
October 31, petition for review denied December 16, 1986 (302 Or 460)

In the Matter of the Proposed
Suspension or Revocation of the
License of Dr. Susan K. Gilmore.

GILMORE,
*Petitioner,*

*v.*

BOARD OF PSYCHOLOGIST EXAMINERS
OF THE STATE OF OREGON,
*Respondent.*

(CA A29557)

725 P2d 400

Leslie M. Swanson, Jr., Eugene, argued the cause for petitioner. With him on the briefs were Timothy J. Sercombe, and Sharon A. Rudnick, Eugene.

Michael D. Reynolds, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

ROSSMAN, J.

## ROSSMAN, J.

As a result of complaints filed against petitioner, the Board of Psychologist Examiners served her with a Notice of Proposed Revocation of License containing 19 charges. After a 13-day hearing, the hearings examiner dismissed 16 of the charges. The Board, in its final order, sustained ten of the charges against petitioner and revoked her license to practice psychology, stating that

> "any single one of the charges sustained against Dr. Gilmore is sufficient to our conclusion as to the appropriate sanction, and in arriving at our conclusion as to the appropriate sanction, we have determined that Dr. Gilmore's license should be revoked on the basis of each charge."

Petitioner has been a practicing psychologist since 1974. She has taught psychology and has written articles and a textbook. She has been a member of the Board of Psychologist Examiners and has served as its chair. She is a Diplomate in Counseling Psychology. In January, 1975, she began counseling C. In October, 1976, they started a sexual relationship which lasted until April, 1978. In November, 1977, petitioner began counseling P, who started working as a para-professional at petitioner's clinic in April, 1978. A sexual relationship began in that month and continued for over two years.[1] At issue in the case is the conduct of petitioner in her professional practices employed during the course of therapy. Petitioner's position is that she treated the complainants as she did other clients and that therapy had terminated before the sexual relationships began.

We turn first to petitioner's challenges to the fairness of the proceedings. On June 7, 1983, the Board voted to revoke petitioner's license. It directed that findings be prepared. The Board's chair signed the order on August 9. Then, on June 4, 1984, the Board withdrew the order for reconsideration. The final order on reconsideration was signed on October 16, 1984. The Board added to the original order additional findings

---

[1] The testimony was in conflict as to when certain events occurred. The Board specifically found the testimony of petitioner not credible, because she had lied about her sexual relationships with the complainants and her answers about important events were evasive and self-serving. Petitioner argues that the Board erred in making a "blanket" determination of credibility. We do not agree. The Board explained its basis for finding that petitioner is not credible.

about credibility, termination of psychologist-client relationships and other issues.

■ Petitioner argues that the Board could not adopt its order before its findings were drafted. Although an order must be based on a determination of facts, ORS 183.470, petitioner cites no reason that the written recording of those findings must precede the decision. *See Heilman v. City of Roseburg,* 39 Or App 71, 75, 591 P2d 390 (1979).

■ She contends that the order on reconsideration is not valid, because there is no record of its adoption. As a public agency, the Board is required to keep minutes of its public meetings, ORS 192.650(1), but the deliberations of a contested case are exempt from the requirements. ORS 192.690(1). Petitioner argues, however, that the final vote must take place in open session and the reason why the record here fails to show that a vote was taken is that there never was a vote.

We cannot agree, as petitioner urges, that the failure to record the vote in and of itself proves that there was no vote. Petitioner has not contended that the failure to record the vote resulted in, or was caused by, a manipulation of the vote of the members against petitioner. In the absence of a showing of prejudice, petitioner has not rebutted the presumption that public officials perform their duties lawfully. ORS 40.135(1)(j). The absence of a recorded vote alone is not reversible error.[2]

■ Petitioner further argues that reversal is required, because the proceedings were "tainted" with bias. Petitioner has the burden of showing bias. *Samuel v. Board of Chiropractic Examiners,* 77 Or App 53, 59, 712 P2d 132 (1985), *rev den* 300 Or 704 (1986). She points to no individual who she claims was biased against her nor to any *ex parte* contacts which should have been disclosed and were not. *Samuel v. Board of Chiropractic Examiners, supra.* In fact, after the original order was withdrawn, the Board gave petitioner the opportunity to depose Board members to address the issue of bias. Petitioner did so. Her general disagreement with the proceedings does not meet her burden of showing actual prejudice which

---

[2] Petitioner argues that she was not given an opportunity to file exceptions to the order on reconsideration. There is no statutory requirement that she be given such an opportunity. She did file exceptions to the proposed order of the hearings officer.

requires reversal. *See Gregg v. Racing Commission,* 38 Or App 19, 25, 588 P2d 1290, *rev den* 286 Or 637 (1979).

We turn next to petitioner's challenges to the sufficiency of the standards applied against her. She argues that, before the Board could discipline her, it was required to promulgate rules under the holdings of *Trebesch v. Employment Division,* 300 Or 264, 710 P2d 136 (1985), and *Megdal v. Board of Dental Examiners,* 288 Or 293, 605 P2d 273 (1980). The Board is made up of five licensed psychologists, who have "doctoral degrees with primary emphasis in psychology," and two public members. ORS 675.100. The Board has the authority under the applicable provisions of the Administrative Procedures Act to make reasonable rules to carry out its authority to sanction. ORS 675.110(15). After a hearing, ORS 675.085, the Board may deny, suspend or revoke a license of any psychologist who, in the judgment of the Board, has violated any provision of ORS 675.070.[3] The Board concluded:

> "* * * Dr. Susan K. Gilmore is guilty of unprofessional conduct and gross negligence under the provisions of ORS 675.070(1)(e), that Dr. Susan K. Gilmore is emotionally unfit to practice psychology under the provisions of ORS

---

[3] ORS 675.070 was amended in 1985. The grounds for license revocation were not changed. At the time of the hearing, ORS 675.070(1) provided for license revocation if a person:

"(a) Is habitually drunk;

"(b) Is addicted to the use of controlled substances;

"(c) Has been convicted of violation of any law relating to controlled substances;

"(d) Has been convicted of any felony or of any misdemeanor involving moral turpitude;

"(e) Is guilty of immoral or unprofessional conduct or of gross negligence in the practice of psychology;

"(f) Is mentally or emotionally unfit to practice psychology;

"(g) Has practiced or attempted to practice medicine without being licensed to do so;

"(h) Has obtained or attempted to obtain a license under ORS 675.010 to 675.150 by fraud or material misrepresentation;

"(i) Has impersonated a licensed psychologist or has allowed another person to use the license of the psychologist; or

"(j) Has violated any provision of ORS 675.010 to 675.150 or any provision of the Code of Professional Conduct formulated under ORS 675.110(10).

675.070(1)(f), and that Dr. Susan K. Gilmore has violated several of the provisions of the Code of Professional Conduct under the provisions of ORS 675.070(1)(j)."

Petitioner's position is that, although the parties agree that a sexual relationship between a psychologist and client is unethical, the bulk of the charges against her involve her professional treatment of the complainants. Because there is disagreement among experts as to what standards of conduct are appropriate, standards must be defined before adjudication. However, we do not decide whether the terms in ORS 675.070(1)(e) and (f) are subject to pre-adjudicative rulemaking, because we determine that the evidence supports the Board's conclusion that petitioner violated Ethical Principle 2.d, which, under the Board's order, itself warrants revocation of her license.[4]

Under ORS 675.110(12), the Board is empowered to

"formulate a code of professional conduct for the practice of psychology giving particular consideration to the Ethical Standards of Psychologists promulgated by the American Psychological Association."

A violation of the code is grounds for revocation. ORS 675.070(1)(j). In 1973, the Board adopted the Ethical Standards,[5] and in 1981 it adopted the revised version which proscribes sexual relations with a client.

Petitioner was found to have violated standards 3, 7 and 2.d. She argues that standards 3 and 7 are "aspirational" and cannot be used as a basis for discipline without further specification. She does not make that claim as to 2.d, and we conclude that it is a specific directive not requiring further definition before disciplinary action can be taken.

Principle 2 states:

"Competence. The maintenance of high standard professional competence is a responsibility shared by all psychologists in the interest of the public and of the profession as a whole."

---

[4] We do not agree with petitioner that the penalty is disproportionate to the conduct. The revocation of a license is a sanction within the Board's discretion. *See Mary's Fine Food, Inc.*, 30 Or App 435, 440, 567 P2d 146, *rev den* 280 Or 683 (1977).

[5] In this document, the standards are identified as "Specific Principles."

The principle is defined in four subsections. Petitioner was accused of violating subsection d:

"The psychologist in clinical work recognizes that his effectiveness depends in good part upon his ability to maintain sound interpersonal relations, that temporary or more enduring aberrations in his own personality may interfere with this ability or distort his appraisals of others. There he refrains from undertaking any activity in which his personal problems are likely to result in inferior professional services or harm to a client; or, if he is already engaged in such an activity when he becomes aware of his personal problems, he seeks competent professional assistance to determine whether he should continue or terminate his services to his client."[6]

In its "Ultimate Findings of Fact and Conclusions of Law," the Board explained its interpretation of the standard:

"The essence of this charge is that if a psychologist has a personal problem which might affect his or her services to the patient, he or she should take some action to resolve the problem before beginning or continuing the therapeutic relationship with the patient."

The Board found that, in regard to C, petitioner was aware from the beginning of the therapist-client relationship that C had always had dependency problems. Petitioner first treated her in January, 1975, and later both C and her husband were treated by petitioner and her husband. C had a therapy session in June, 1976, during which petitioner stroked her back and embraced her. The two met again by chance in October, 1976, and a few days after that meeting the sexual relationship began.

In regard to P, the findings show that petitioner began treating her in November, 1977. During the sessions,

---

[6] The Notice of Proposed Revocation stated:

"You failed to recognize that your effectiveness depends in good part upon your ability to maintain sound interpersonal relations, that temporary or more enduring aberrations in your own personality may interfere with that ability or distort your appraisal of others. You have failed to refrain from undertaking any activity in which your personal problems were likely to result in inferior professional services or harm to a client or clients. During periods of psychotherapy relationships, when you became aware (or should have become aware) of your own personal problems, you failed to seek competent professional assistance to determine whether you should continue or terminate your services to your client(s). (Ethical Standards of Psychologists, Principle 2.d.) This allegation involves your relationships with * * *."

petitioner hugged P and in late December, 1977, petitioner began to make frequent telephone calls to her. In early 1978, petitioner began to talk with her about a possible joint business venture. In March, 1978, during a therapy session, P became agitated and petitioner indicated that therapy was concluded. That surprised P, but petitioner stated that she would be available while P was working at petitioner's counseling center. Petitioner was aware that P needed more therapy but did not refer her to another therapist. Petitioner was also aware that she felt dependent on her. In early April, 1978, the sexual relationship began.

From these facts, the Board reasoned:

"When a therapist's emotional state overwhelms the rational decision-making process in dealing with clients, we think it demonstrates a significant personal problem. This personal problem would be very likely to cause loss of objectivity and to therefore result in inferior services to a client who is the object of the attraction. Harm to the client in this situation is also likely, because the client is vulnerable, is in a position to be exploited, yet has placed trust in the therapist.

"* * * * *

"We infer from the evidence that Dr. Gilmore was aware of her attraction for Ms. C * * * and Ms. P * * * even prior to the termination of formal therapy. In any event, as a trained and experienced therapist, she should have been aware of such attractions. Dr. Gilmore obviously was aware of having acted out those attractions, when the courtships and sexual relationships began. If she did not realize, at this point, that she had a problem, she certainly should have, in view of her education, training and experience. Yet she failed to seek professional assistance."[7]

---

[7] Petitioner claims that the Board acted beyond the scope of its statutory authority in applying ORS 675.070(1)(j) to conduct which was outside the practice of psychology. ORS 675.010(4). Petitioner argues that there is no substantial evidence that her conduct after certain dates meets the statutory definition of "practice of psychology." The thrust of much of her argument is that she was no longer in a therapeutic relationship with C or P at the time of the sexual relationships. The determination of when such a relationship ends is not subject to definition applicable in every case. There is evidence to support the Board's conclusion that the therapist-client relationship had in fact not ended when the sexual relationship started. However, in any event, violation of standard 2.d is not dependent on a determination of whether therapy had ended. The evidence supports the Board's inference that petitioner's sexual interest in the complainants began during therapy. It is the loss of objectivity which the rule proscribes, not the emotional attraction. The Board's order adequately addresses petitioner's evidence and issues, particularly in regard to 2.d.

The Board concluded that petitioner had a sexual attraction for C and P which she was "unable or unwilling to suppress" and that a rational decision would have been to avoid the relationships, to seek professional help or to refer the clients to other therapists. The Board was warranted in concluding that petitioner violated Ethical Standard 2.d, which requires a psychologist-client relationship to be objective on the part of the practitioner. If a practitioner's personal interests intrude into the relationship, the practitioner is obliged to re-create objectivity through a third party. The Board's findings and conclusions that petitioner failed to maintain that objectivity are supported by the record.

Affirmed.