Argued and submitted November 9, 1995, reversed and remanded with
instructions July 10, 1996

CITY OF SCAPPOOSE,
Scappoose City Club,
and all other Petitioners from the
Scappoose Local Telephone Exchange,
*Respondents,*

*v.*

PUBLIC UTILITY COMMISSION
OF OREGON,
a state agency,
*Appellant.*

(94-2001; CA A88205)

919 P2d 543

Pamela G. Wood, Assistant Attorney General, argued the cause for appellant. With her on the briefs were Theodore R. Kulongoski, Attorney General, Virginia L. Linder, Solicitor General, Philip M. Schradle, Assistant Attorney General, and Joseph T. McNaught, Assistant Attorney General.

Nancy Sideras argued the cause and filed the brief for respondents.

Before Deits, Presiding Judge, and De Muniz and Haselton, Judges.

DEITS, P. J.

## DEITS, P. J.

Defendant Public Utility Commission (PUC) appeals from the trial court's judgment reversing PUC's orders holding that the Scappoose Telephone Exchange does not meet the tests for inclusion in the Portland Extended Area Service (EAS) region. We reverse.

Plaintiffs are the City of Scappoose and other users of the telephone exchange (collectively Scappoose). They brought this circuit court action pursuant to ORS 756.580 *et seq*, seeking to set aside the three PUC orders through which Scappoose was found to be ineligible for inclusion in the Portland EAS region. *See* ORS 756.040.

PUC has developed the criteria for EAS inclusion determinations through a series of orders in particular cases. *See Trebesch v. Employment Division*, 300 Or 264, 710 P2d 136 (1985). Its basic standard is whether a "community of interest" exists between the petitioning exchange and the region in which it seeks extended area service. PUC has established two methods by which an exchange can demonstrate EAS eligibility. The first is the "objective criteria test," which requires an exchange to demonstrate: (1) territorial contiguity and numerically specific requirements for (2) minimum calling volume and (3) minimum calling distribution. All three criteria must be met to pass the objective criteria test. The second method, which is available for those exchanges that do not satisfy the first test, is the "alternative showing" test. Under that test, community of interest may be demonstrated by reference to eleven criteria:

> "(1) geographic and demographic information; (2) location of schools; (3) governmental services and jurisdictional issues; (4) emergency services; (5) social services; (6) medical and dental providers; (7) employment and commuting patterns; (8) business and commercial dependence or interdependence; (9) transportation patterns; (10) the results of the objective criteria test; and (11) other factors deemed relevant by the Commission."

PUC had previously articulated the first nine factors that it had determined could be considered. In the present proceedings, PUC amplified the "alternative showing" test to include the tenth and eleventh factors.

PUC concluded that, although Scappoose satisfied two of the three factors under the objective criteria test, it failed to meet the third objective condition, because the calling distribution from the exchange did not meet the requirement that at least one-third of Scappoose customers make at least four toll calls to five exchanges in the Portland region over a designated period. PUC further concluded that Scappoose did not make a sufficient showing for EAS inclusion under the alternative showing test.

In the same orders, PUC decided that the City of Newberg and certain others did qualify for inclusion in the Portland EAS region. Although Newberg also failed the distribution component of the objective criteria test and passed the other two, PUC concluded that it came significantly closer to passing the distribution test than did Scappoose. Because of that and considerations such as business, shopping and commuting connections between Newberg and areas in the Portland region, PUC concluded that Newberg had made a satisfactory alternative showing.

Scappoose then brought this action. The trial court reversed and modified the three orders and directed that the Scappoose exchange be included in the Portland EAS region. The court concluded that PUC's orders were not supported by substantial evidence, ORS 756.598; that "there is no rational relationship between [PUC's] findings and its conclusion that Newberg should be included and Scappoose should be excluded from the Portland EAS region"; and that PUC's orders and its ultimate conclusion are "arbitrary and unreasonable."[1]

The trial court based its ruling in large measure on the purported disparity between PUC's orders concerning Scappoose and Newberg. The court recited in the judgment, *inter alia*:

"5. The evidence submitted to the Commission by Scappoose and Newberg under the alternative showing test

---

[1] Scappoose defends the trial court's rulings according to their terms, in addition to advancing various other arguments favoring an affirmance. The other arguments do not warrant separate discussion.

reveals no material distinction between the two communities except for the results of the objective criteria test;

"6. On all factors other than the results of the objective criteria test, no distinction can be discerned, except markedly in favor of Scappoose as opposed to Newberg;

"7. The defendant Commission's Orders are unreasonable because the Commission did not objectively apply the alternative showing test to both Newberg and Scappoose, which fact is clearly shown by the compilation of evidence submitted by Scappoose at the Court's request;

"8. The defendant Commission arbitrarily picked and chose from the evidence by Scappoose and Newberg under the alternative showing test in approving Newberg and denying Scappoose for inclusion in the Portland EAS region[.]"

In its first assignment of error, PUC contends generally that the court erred in the foregoing conclusions and reasoning and exceeded the authorized scope of its review. We agree. ORS 756.594 provides:

"In any suit referred to in ORS 756.580, the burden of proof is upon the party seeking to modify, vacate or set aside findings of fact, conclusions of law or the order to show by clear and satisfactory evidence that the order is unreasonable or unlawful."

ORS 756.598(1) provides:

"Court review of any findings of fact, conclusions of law or order referred to in ORS 756.580, shall be conducted by the court without a jury, but the court shall not substitute its judgment for that of the commission as to any findings of fact supported by substantial evidence. The review shall be confined to the record and no additional evidence shall be received except as provided in ORS 756.600 or except to show alleged irregularities in procedure before the commission not shown in the record. The court may affirm, modify, reverse or remand the order."

It is clear at the outset that the trial court exceeded the permissible scope of review. It essentially reweighed the evidence and made findings of its own rather than reviewing PUC's findings for substantial evidence. However, that does not conclude our consideration because, in an appeal from the

court's judgment under ORS 756.580 *et seq*, we review PUC's order directly. *Citizens' Utility Board v. Public Utility Commission*, 128 Or App 650, 655, 877 P2d 116, *rev den* 320 Or 272 (1994).

■ We conclude that PUC's orders were supported by substantial evidence and were not shown by Scappoose to be unreasonable or unlawful. Insofar as Scappoose's argument and the trial court's rulings are based on what they characterize as "disparate" treatment of the Scappoose and Newberg petitions, we do not agree that any disparity has been shown.[2] Simply put, PUC's orders explain that Newberg came closer to passing the objective criteria test and, for both overlapping and independent reasons, it made a better alternative showing than Scappoose. The trial court erred by reversing the orders.

The part of the trial court's judgment that PUC challenges in its second assignment is automatically vacated by our disposition of the first.

Reversed and remanded with instructions to affirm the Public Utility Commission's orders.

---

[2] By addressing this argument, we do not imply agreement with its premise that the coincidence of their being resolved in the same orders makes PUC's disposition as to Newberg relevant to our review of the orders regarding Scappoose under the standards in ORS 756.594 and ORS 756.598.