Argued and submitted March 5, at the University of Oregon School of Law, Eugene, Oregon, decision of Court of Appeals and order of Board of Geologist Examiners affirmed July 9, 2010

Nicholas W. COFFEY,
*Petitioner on Review,*

*v.*

BOARD OF GEOLOGIST EXAMINERS,
*Respondent on Review.*

(BGE 03-03-002, 03-09-006, 04-07-004;
CA A134319; SC S057511)

235 P3d 678

James E. Mountain, Jr., of Harrang Long Gary Rudnick P.C., Portland, argued the cause and filed the brief for petitioner on review. With him on the brief was Jona J. Maukonen.

Denise G. Fjordbeck, Assistant Attorney General, Salem, argued the cause and filed the brief for respondent on review. With her on the brief were John R. Kroger, Attorney General, and Jerome Lidz, Solicitor General.

DURHAM, J.

## DURHAM, J.

Nicholas W. Coffey (petitioner), a registered geologist, seeks review of a Court of Appeals decision, *Coffey v. Board of Geologist Examiners*, 226 Or App 418, 204 P3d 177 (2009), that affirmed an order of the Board of Geologist Examiners (board) that had revoked his certificate of registration on grounds of negligence, gross negligence, and two violations of the board's rules of professional conduct. On review, petitioner argues that this court should reverse the order on one or more of the following grounds: the board lacked the authority to revoke his certificate of registration, the board's rules defining "negligence" and "gross negligence" were insufficient, and some of the conclusions in the board's order were not supported by substantial reason.[1] We affirm the Court of Appeals decision and the board's order.

In 2004, after receiving complaints about two of petitioner's hydrogeology reports (the Nielson report and the DeHart report), the board filed a notice of proposed disciplinary action in which it proposed to reprimand petitioner, suspend petitioner's license for one month, impose a subsequent probationary period if and when petitioner was reinstated, and impose civil penalties.[2] In 2005, after the board received a third complaint regarding the quality of an letter opinion prepared by petitioner (the Miller report), the board amended its notice of proposed disciplinary action and raised the proposed sanction to revocation of petitioner's certificate of registration. The amended notice alleged that petitioner had committed "negligence, gross negligence, incompetence or misconduct in the practice of geology as a registered geologist" in the preparation and handling of the three reports, and that petitioner had violated three of the standards in the

---

[1] Petitioner does not challenge the board's factual findings. Accordingly, we accept those findings as the facts for purposes of judicial review. *See Meltebeke v. Bureau of Labor and Industries*, 322 Or 132, 134, 903 P2d 351 (1995) (so holding under analogous circumstances).

[2] The board had previously issued petitioner a letter of concern, dated March 27, 2003, in which it had noted concerns about the technical quality of "numerous reports" completed by petitioner and emphasized that "it is imperative that [petitioner's] work product reflect the 'care, skill, and diligence' " demonstrated by registered geologists in petitioner's community.

board's code of professional conduct. Following a hearing before an administrative law judge, the board issued a final order that revoked petitioner's certificate of registration.[3] In that order, the board concluded that petitioner had been negligent and grossly negligent in his work on the Nielson and DeHart reports, negligent in his work on the Miller report, and had violated two rules of professional conduct.[4] Petitioner sought judicial review and the Court of Appeals affirmed without opinion. *Coffey*, 226 Or App 418.

    On review, petitioner first argues that the board lacked the authority to revoke his registration. He relies on *Megdal v. Board of Dental Examiners*, 288 Or 293, 605 P2d 273 (1980) for the proposition that the board must adopt a rule stating the board's standard for selecting a particular sanction from the range of possible sanctions listed in ORS 672.675 before it may impose any of those sanctions. Petitioner argues that, because the board did not adopt such a rule, it lacked legal authority to revoke his certificate of registration. For the reasons that follow, we disagree.

    Whether an agency is required to promulgate rules in advance of an adjudication is "a matter of statutory

---

[3] Initially, the board issued a final order that revoked petitioner's license. After petitioner filed a petition for judicial review in the Court of Appeals, the board withdrew its final order, reconsidered the matter, and issued a final order on reconsideration pursuant to ORS 183.482(6). That statute provides, in part:

> "At any time subsequent to the filing of the petition for review and prior to the date set for hearing [before the Court of Appeals] the agency may withdraw its order for purposes of reconsideration. If an agency withdraws an order for purposes of reconsideration, the agency shall, within such time as the court may allow, affirm, modify or reverse its order. If the petitioner is dissatisfied with the agency action after withdrawal for purposes of reconsideration, the petitioner may refile the petition for review and the review shall proceed upon the revised order. An amended petition for review shall not be required if the agency, on reconsideration, affirms the order or modifies the order with only minor changes. * * *"

In the Court of Appeals, petitioner filed an amended petition for judicial review of the final order on reconsideration. Accordingly, the board's final order on reconsideration (*i.e.*, its second order) is the operative order on review.

[4] In the final order on reconsideration, the board concluded that petitioner had violated (1) OAR 809-020-0025(1) by failing to respond to a letter from the board within the designated time period; and (2) OAR 809-020-0001(1) by signing and placing his seal on unprofessional work. Petitioner does not challenge those conclusions on review.

interpretation."[5] *Trebesch v. Employment Division*, 300 Or 264, 267, 710 P2d 136 (1985); *see also Forelaws on Board v. Energy Fac. Siting Council*, 306 Or 205, 214, 760 P2d 212 (1988) ("If an agency is required to adopt a rule through rulemaking proceedings, that requirement must be found through an analysis of the specific statutory scheme under which an agency operates and the nature of the rule that the agency wishes to adopt." (Citation omitted.)). When no statute expressly requires an agency to make rules before selecting a disciplinary sanction, a reviewing court examines the statutory text and context pertaining to the agency's delegated responsibilities regarding the disciplinary process to discern whether the legislature nonetheless impliedly intended to require the agency to make rules concerning the subject matter in question before selecting an otherwise authorized sanction.

"In the absence of an explicit directive, the breadth and kind of responsibility delegated to the agency by the statutory term (fact-finding, applying an ambiguous law, or developing policy) will be one, but not a dispositive, factor which may indicate an implicit directive from the legislature for rulemaking. In addition, the tasks the agency is responsible for accomplishing, and the structure by which the agency performs its mandated tasks, all of which are

---

[5] Two lines of authority from this court prescribe distinct modes of analysis for determining the intent of the legislature in enacting certain statutes. In *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610, 859 P2d 1143 (1993), this court outlined three levels of analysis, beginning with the text and context of the pertinent statute, that have as their objective the discovery of "the intent of the legislature" in enacting a statute. *Id.* In *Springfield Education Assn. v. School Dist.*, 290 Or 217, 621 P2d 547 (1980), this court, relying on earlier cases, including *Megdal*, concluded that it would determine the nature and scope of agency authority delegated by statutes, including whether a statute required agency rulemaking in advance of adjudication, by examining three types of statutory terms, "exact," "inexact," and "delegative." *Id.* at 223 (citing *McPherson v. Employment Division*, 285 Or 541, 591 P2d 1381 (1979), and *Megdal*); *see also Ross v. Springfield School Dist. No. 19*, 294 Or 357, 367-68, 657 P2d 188 (1982) (discussing the three categories of statutory terms outlined in *Springfield Education Assn.* and distinguishing *Megdal*).

Those lines of authority are not inconsistent; each operates in its proper context to guide courts and agencies in determining the intent of the legislature in enacting statutes. *See Bergerson v. Salem-Keizer School District*, 341 Or 401, 413-14 & n 7, 144 P3d 918 (2006) (rejecting argument that court must disregard cases predating *PGE*; applying methodologies from both *Springfield Education Assn.* and *PGE* to determine scope of interpretive responsibility of agency and court under agency's authorizing statute).

specified in an agency's authorizing legislation, must be examined as a whole in order to discern the legislature's intent with regard to rulemaking."

*Trebesch*, 300 Or at 270.

With the foregoing general principle in mind, we turn to a discussion of the statutes identifying the board's responsibilities. The legislature has charged the board with regulation of the professional practice of geology in this state. *See generally* ORS 672.505 to 672.705 (providing for administrative regulation of the practice of geology under board authority). To enable the board to accomplish that general mandate, the legislature has authorized the board to certify qualified applicants as registered geologists (ORS 672.555), has required the board to promulgate and distribute a code of professional conduct (ORS 672.655),[6] and has given the board the power to discipline registered geologists for certain described acts (ORS 672.675).

That final responsibility—disciplinary decisions—is the specific task at issue in this case. ORS 672.675 provides the statutory basis for revocation of a geologist's certificate of registration:

"The State Board of Geologist Examiners has the power to *suspend, revoke or refuse to renew the certificate of registration* of any registrant *or reprimand* any registrant who is found to have been involved in:

"(1) The practice of any fraud or deceit in obtaining a certificate of registration,

"(2) Any negligence, gross negligence, incompetence or misconduct in the practice of geology as a registered geologist;

"(3) Any felony; or

---

[6] ORS 672.655 provides:

"The State Board of Geologist Examiners shall cause to be prepared and shall adopt a code of professional conduct which shall be made known in writing to every registrant and applicant for registration under ORS 672.505 to 672.705. A copy of the code shall be provided to each successful applicant at the time of registration under ORS 672.585. The board may revise and amend this code of ethics from time to time and shall forthwith notify each registrant in writing of such revisions or amendments."

"(4) The commission of any unlawful act set forth in ORS 672.505 to 672.705."

(Emphasis added.)

Other statutes and rules describe the procedures by which the board accomplishes the task of disciplining geologists. The board[7] refers sworn complaints against a geologist to the board's compliance committee. ORS 672.665; OAR 809-055-0000(3).[8] If the committee determines that the complaint "may have validity," then "it will notify the [geologist] of allegations by mail and request written comments." OAR 809-055-0000(4)(b). After the committee evaluates the complaint and any written comments from the geologist, it makes its recommendation to the board whether charges should be brought. The board makes a final decision whether to pursue formal charges. OAR 809-055-0000(4) - (5). If it chooses to do so, the board then issues a notice informing the geologist of the proposed disciplinary action, which triggers the full panoply of contested case procedures under the Oregon Administrative Procedures Act (APA), including the right to judicial review. ORS 670.325(1);[9] ORS 183.482 (providing for judicial review of contested cases).

The legislature has granted broad rulemaking authority to the board. ORS 670.310(1) provides:

"Except as otherwise provided by law and in accordance with any applicable provisions of ORS chapter 183, each

---

[7] The board consists of "four geologists and one public member, appointed by the Governor," as well as the State Geologist, who is an *ex officio* member. ORS 672.615(1), (2). The board may also "appoint an administrator who shall not be a member of the board." ORS 672.615(7).

[8] We refer in this opinion to the version of OAR 809-055-0000 now in effect. The 2004 version of that rule, in effect at the time that the board received and reviewed the three complaints about petitioner's hydrogeology reports, was substantively identical, although it contained some differences in phrasing and section numbering that do not affect the analysis of this case.

[9] ORS 670.325(1) provides that

"[a]ll proceedings for the refusal to issue, or the suspension or revocation of any license, [or] certificate of registration * * * required to practice any profession subject to the authority of a professional licensing or advisory board shall be conducted pursuant to the procedure for contested cases required or authorized by ORS chapter 183."

ORS 670.304(8) expressly makes the above provision applicable to proceedings of the board.

professional licensing board and advisory board may make such rules as are necessary or proper for the administration of the laws such board is charged with administering."

The legislature, in ORS 670.304(8), has made ORS 670.310(1) applicable to the board.

As noted, ORS 672.655 requires the board to adopt a code of professional conduct but does not specify the code's content. Petitioner has not identified, and we have not discovered, any statute that expressly requires the board to adopt rules specifying the standards that it will follow in selecting a particular sanction in disciplinary proceedings. Petitioner submits, however, that the "legislature's grant of authority to choose to punish from a list of potential sanctions is sufficiently broad to constitute a delegation of legislative authority." Accordingly, petitioner concludes, *Megdal* requires the board to employ prior rulemaking that specifies the criteria that the board will use in selecting a disciplinary sanction.

*Megdal* concerned ORS 679.140 (1977), which authorized the Board of Dental Examiners to regulate the professional practice of dentists, and specifically authorized the board to discipline any licensed dentist for "unprofessional conduct." ORS 679.140(2) defined "unprofessional conduct" as "includ[ing] but not limited to" a list of specific activities. The Board of Dental Examiners revoked the petitioner's dentistry license for fraudulent business practices concerning applications for dental malpractice insurance—an activity not listed as "unprofessional conduct" under ORS 679.140(2). The petitioner sought judicial review, arguing that the board lacked the authority to discipline him without first promulgating a rule identifying the particular fraudulent business practice as unprofessional conduct. The court noted that, in statutory schemes governing other occupational licensing agencies, the legislature had explicitly required those agencies to promulgate rules of professional conduct. In that context, the court in *Megdal* held that

"when a licensing statute contains both a broad standard of 'unprofessional conduct' that is not fully defined in the statute itself and also authority to make rules for the conduct of

the regulated occupation, the legislative purpose is to provide for the further specification of the standard by rules, unless a different understanding is shown."

*Id.* at 313-14. Relying on *Trebesch* and *Megdal*, petitioner argues that, when the legislature has authorized an agency to regulate a profession, has granted the agency broad rulemaking authority, has required the agency to adopt a code of professional conduct, *and* has made the agency responsible for completing an incomplete legislative policy, such as selecting a disciplinary sanction, then a rebuttable presumption arises that the legislature intended the agency to complete that incomplete policy by rulemaking, rather than by adjudication.

We disagree that *Megdal* requires the sort of rulemaking that petitioner seeks here. As noted, and as in *Megdal*, the legislature has empowered the board with rulemaking authority.[10] However, *Megdal* involved a situation in which the legislature impliedly had directed an agency to give detail to a term of delegation—"unprofessional conduct"—which the court characterized as a "broad standard * * * that is not fully defined in the statute itself." *Id.* at 313. In doing so, the legislature authorized the agency to complete an incomplete legislative policy by identifying by rule the *kind or kinds* of conduct that would warrant discipline as "unprofessional conduct."

In contrast, here the legislature has expressed a complete policy: the board has the power to impose a sanction from the list of sanctions set out in ORS 672.675, *i.e.*, reprimand, refusal to renew the certificate of registration, suspension, or revocation, if it finds that a registrant has "been involved in" conduct described in ORS 672.675(1) to (4).[11] The

[10] As noted, ORS 670.304 and ORS 670.310 vest the board with authority to make all necessary or proper rules for the administration of the board's authorizing statutes, in accordance with applicable provisions of the APA.

[11] The legislature also has authorized the board to impose a civil penalty for a violation of the statutes and rules that regulate the practice of geology. ORS 672.690(1) provides:

"In addition to any other penalty provided by law, a person who violates any provision of ORS 672.515 to 672.705 or any rule adopted thereunder is subject to payment of a civil penalty to the State Board of Geologist Examiners in the amount of not more than $1,000 for each offense."

four potential sanctions that the statute authorizes are graduated in their severity, from reprimand to revocation. That aspect of the statute indicates that the legislature intended the board, when imposing professional discipline, to gauge the type or types of disciplinary sanction imposed according to the severity of the misconduct that it finds. Although that determination by the board constitutes the exercise of delegated authority, applying the specified graduated sanctions to the facts underlying the charges of negligence and gross negligence is more analogous to the interpretation and application of existing law than to the making of new law or the completion of an incomplete legislative policy. That explains, in part, why *Megdal* does not require the particularized rulemaking for which petitioner contends before the board can select a disciplinary sanction under ORS 672.675.[12]

Two additional interpretive clues lend further support to our conclusion. First, in other statutes that charge the board with regulating other aspects of the profession of geology, the legislature *has* explicitly required that the board act by rulemaking, rather than by adjudication. *See* ORS 672.555(4) (board "shall, by rule," adopt the minimum coursework requirements for an eligible applicant for a certificate of registration); ORS 672.555(2)(b)(D) (board shall determine the adequacy of an applicant's geological work history experience "in accordance with standards adopted by rule"); ORS 672.565(1) (board may create specialties "by rule, with the rules to contain any required additional qualifications"); ORS 672.565(5) (board may "establish by rule criteria for exempting persons applying for a certification from a

---

[12] *Trebesch* confirms that the nature of the statutory term in question, *i.e.,* whether the term is inexact or delegative, does not determine the necessity of rulemaking to define the term prior to its application in an adjudication:

"*Megdal* does not mean that all terms delegating policymaking discretion can be applied only after rulemaking. Nor does *Ross* mean that terms delegating interpretive responsibility may always be applied as the agency chooses, either by rule or by adjudication. Both cases address only the requirement for rulemaking in the individual agencies at issue in the cases."

300 Or at 270.

Accordingly, *Trebesch* requires examination of not only the statutory term in question but also the scope of the agency's responsibility, the agency's structure for performing mandated tasks, and any other factor that bears on the legislature's intent regarding rulemaking. *Id.*

written examination requirement"); ORS 672.655 (board shall "adopt a code of professional conduct"). The fact that the legislature did not include a similar express rulemaking requirement in ORS 672.675 with regard to the board's choice of sanctions provides some indication that it did not so intend.

Second, as discussed above, the legislature has provided that the board will use contested case proceedings to discipline geologists. *See* ORS 670.325 and ORS 670.304(8) (requiring the board to conduct contested case proceedings before suspending or revoking a geologist's certificate of registration). The legislature's specification of the authorized range of sanctions available to the board in a contested case is not ambiguous. Clearly, the legislature envisioned that the board would select a sanction, if appropriate, from the range of legislatively authorized sanctions on a case-by-case basis, and that the board's resulting final order would be subject to judicial review under ORS 183.482. The board does have the authority to disclose its criteria for choosing a particular sanction in advance of a contested case hearing, either by including that information in its code of professional conduct, *see* ORS 672.655, or by other rulemaking. However, by contrast to *Megdal*, we cannot conclude that a disclosure through advance rulemaking of the board's criteria for choosing a particular sanction is necessary to ensure the fairness of the contested case or any later judicial review proceedings. In our view, certificate registrants are able to efficiently conduct their professional activities without advance notice by rule of the board's criteria for selecting sanctions in disciplinary proceedings. Those considerations indicate that it is not likely that the legislature intended in ORS 672.675 to require prior rulemaking concerning the board's criteria for selecting a disciplinary sanction.

The requirement of ORS 672.655 that the board prepare and adopt a code of professional conduct does not alter the foregoing observation. ORS 672.655 contains no explicit requirement concerning the content of the board's code of professional conduct. The code of professional conduct that the board has adopted, OAR 809-020-0001 to 809-020-0030,

describes several goals for professional geologists (*e.g.*, honesty, integrity, and protection of the public health and welfare), OAR 809-020-0001, several responsibilities of geologists to the profession of geology, to their employers, and to the board, OAR chapter 809, division 20, and several forms of misconduct that may lead to discipline (*e.g.*, engaging in fraud or misrepresentation), OAR 809-020-0030. However, the board's code of professional responsibility does not describe the board's disciplinary process, leaving the details of that process to other rules. That is a permissible approach; the code, after all, concerns the "professional conduct" of registered geologists, ORS 672.655, not the board's disciplinary responsibilities. ORS 672.655 offers no support to petitioner's contention that the legislature intended to require the board to incorporate standards for selecting disciplinary sanctions into the code of professional responsibility.

Petitioner correctly points out that, in *Megdal*, 288 Or at 311, this court recognized that "the legislature should not be assumed to be insensitive to the importance of fair notice of grounds that may lead to loss of one's profession or occupation." However, this court also has declined to adopt a *per se* rule that the twin aims of fair notice and consistent application of professional discipline can be accomplished only by rulemaking, and not by adjudication. *Cf. Trebesch*, 300 Or at 276 ("Interpretation of statutory terms by orders in contested cases is an adequate alternative to rules. Both are capable of achieving a uniform application of the law."). We assume, of course, that the legislature intended to provide a petitioner with fair notice of potential discipline. Consequently, one relevant consideration under the *Trebesch* analysis is whether the statutory context reveals that the agency can satisfy fair notice concerns if, in selecting a disciplinary sanction, it proceeds by an adjudication rather than rulemaking.

As noted above, the procedures for disciplining individual geologists include built-in safeguards that adequately alleviate concerns about any lack of fair notice regarding proposed discipline under ORS 672.675. The board must provide a geologist with advance notice of the proposed disciplinary action and an opportunity for a hearing to contest both the truth of the allegations and the correctness of the proposed

sanction. ORS 672.675 places with the board the primary responsibility for correct interpretation and consistent application of sanctions in disciplinary proceedings. That structural feature reduces the risk of inconsistent notice procedures or conflicting statutory interpretations that may occur when multiple agencies or multiple panels of decision-makers within a single agency carry out that responsibility. Finally, as the board points out, judicial review under the APA is designed to guard against arbitrary application of sanctions by an agency. *See* ORS 183.482(8)(b)(B) (A court shall remand an order to an agency if the agency's exercise of discretion is "[i]nconsistent with an agency rule, an officially stated agency position, or a prior agency practice, if the inconsistency is not explained by the agency[.]").

The foregoing discussion leads us to conclude that the legislature did not intend to require the board to adopt rules setting criteria for the selection of a particular sanction listed in ORS 672.675 before it could take disciplinary action against petitioner in a contested case proceeding. We reject petitioner's contrary argument.

■    We turn to petitioner's second argument, which focuses on the board's rules defining the terms "negligence" and "gross negligence." As noted above, the board may discipline a registered geologist for "[a]ny *negligence, gross negligence*, incompetence or misconduct in the practice of geology * * *." ORS 672.675(2) (emphasis added). The board has promulgated administrative rules that define the emphasized terms. OAR 809-003-0000(15) defines "negligence" as "[f]ailure by a registrant to exercise the care, skill, and diligence demonstrated by a registrant under similar circumstances in the community in which the registrant practices." OAR 809-003-0000(9) defines "gross negligence" as "[r]eckless and wanton disregard for exercising care and caution."

Petitioner argues that the board's efforts to define those terms by rule fall short. Petitioner contends that the terms "negligence" and "gross negligence" are terms of delegation, such that the board was obligated to complete an incomplete legislative policy by adopting administrative

rules or provisions in the code of professional conduct defining those terms.[13] He acknowledges that the board *has* promulgated administrative rules defining those terms. Petitioner argues, however, that the board's rules are insufficient because they set the standard of care with reference to "the community in which the registrant practices" without indicating *how* the board will determine that community standard of care.[14] Petitioner also argues that, in interpreting its own rules, the board violated a requirement of *Megdal* by relying on expert testimony to determine the standard of "care, skill, and diligence demonstrated by a registrant under similar circumstances in the community in which the registrant practices," *i.e.,* Marion County.[15] The board responds that the definitions adopted for "negligence" and "gross negligence" are consistent with the legislature's general intent, and that expert testimony is an appropriate means to establish or explain the professional standard of care in the pertinent community.

---

[13] In this proceeding, we have no occasion to examine whether the board must explain other broad statutory grounds for discipline, such as "incompetence," "misconduct in the practice of geology," or the other criteria set out in ORS 672.675, through additional rulemaking or through the board's code of professional conduct.

[14] Petitioner levies the same challenge against each definitional rule. He suggests that both rules should have stated that, in determining the standard of care in the community in which a registrant practices, the board will consider practices followed and accepted by persons practicing geology within the county in which the registrant practices.

[15] The parties agree that the relevant community standard for the board's charges governing negligence in the practice of professional geology is the standard of conduct that applies in Marion County, which is where the property for which the hydrogeology reports at issue in this case were prepared. Petitioner argued to the Court of Appeals that the board failed to establish the standard of professional practice in Marion County because the board relied on the expert testimony of a professional geologist, Sprecher, who practiced mainly in central Oregon, but testified about Marion County's requirements based on his review, at the board's request, of Marion County zoning ordinances, including hydrogeology guidelines. Petitioner also asserted that, apart from Sprecher's insufficient testimony, the record contained no other evidence of the standard of care in Marion County.

On review, petitioner makes a somewhat different argument. He claims that the board's rule defining negligence correctly incorporates as an element the standard of care in "the community in which the registrant practices." OAR 809-003-0000(15). However, he contends that that rule is insufficient because it lacks a description of how the board will determine the community standard where the professional geologist practices, and that no other rule fills in that gap. He also argues, citing *Megdal,* that the board's acceptance of Sprecher's expert testimony amounted to an improper delegation of the board's responsibility to set the pertinent standard of care when it enacts its rules before an adjudication.

■    In evaluating the merits of the parties' arguments, we must bear in mind the standard of review that governs our examination of the board's rules. The parties differ about whether the court may categorize the grounds of "negligence" and "gross negligence" as exact terms, inexact terms, or terms of delegation. Each type of term "conveys to the agency a different range of responsibility for definition." *Ross v. Springfield School Dist. No. 19*, 294 Or 357, 367 n 7, 657 P2d 188 (1982). Both exact terms and inexact terms are complete expressions of legislative policy. *Id.* As to exact terms, the agency's task is to apply the term to the facts of the case; as to inexact terms, the agency's task is to interpret the meaning of the term within the completed policy expressed by the legislature. *Springfield Education Assn. v. School Dist.*, 290 Or 217, 224-26, 621 P2d 547 (1980). By contrast, terms of delegation are "non-completed legislation which the agency is given delegated authority to complete." *Id.* at 228.

■    The board contends that the statutory terms "negligence" and "gross negligence" are inexact terms because they represent complete expressions of legislative policy, but require the agency to engage in interpretation to determine whether actions taken by a registered geologist in a particular case fall within the statutory meaning of the terms. The board argues that it was free to interpret those terms either by rulemaking or adjudication. *Id.* at 226 ("An agency may express its determination of which interpretation effectuates the [completed] statutory policy either by rule or * * * by order in a contested case."). The board also points out that, in *Ross*, 294 Or at 368-69, this court, addressing a similar issue, concluded that a contested case final order was a suitable vehicle for the interpretation of the statutory standard of "immorality" in connection with the dismissal of a permanent teacher:

>    "The statute places primary interpretive responsibility with the [Fair Dismissal Appeals Board]. When applying terms of complete legislative expression, an agency may interpret statutory standards either by an interpretive rule or by order in a contested case. *Springfield, supra*, 290 Or at 226. The FDAB has chosen to interpret immorality by means of an order in this case. No requirement for prior rulemaking exists."

We review the board rules defining statutory grounds for discipline for an error of law under ORS 183.482(8)(a).[16] The dispositive inquiry is whether the agency's rules are consistent with legislative intent. *Coast Security Mortgage Corp. v. Real Estate Agency*, 331 Or 348, 353, 15 P3d 29 (2000). In analyzing the text and context of a statute, we apply the well-defined legal meanings of legal terms. *Norden v. Water Resources Dept.*, 329 Or 641, 645, 996 P2d 958 (2000). When an agency interprets its own rules, we defer to that interpretation if it is "plausible and not inconsistent with the rule, the rule's context, or any other source of law." *Friends of Columbia Gorge v. Columbia River*, 346 Or 366, 410, 213 P3d 1164 (2009).

It is important to understand the specific focus of petitioner's argument. Petitioner acknowledges, as he must, that the board did promulgate rules that interpreted the statutory terms "negligence" and "gross negligence." He asserts that the board's definitional rules are incomplete and, therefore, are legally erroneous, because they incorporated a familiar element—the standard of care in the professional geologist's community—but failed to designate specifically how the board would determine and apply the community standard in each case. As we explain below, we disagree. In this context, the community standard element of negligence may differ from place to place and, ordinarily, is determined by courts and other tribunals on a case-by-case basis, frequently with the aid of expert testimony. Consequently, we cannot attribute to the legislature an intent to require the board to specify by rule, in advance of adjudication, how it will determine the community standard of care in every case.

In the professional negligence context, this court has recognized that "the standard of care is that of a reasonably prudent, careful and skillful practitioner of that discipline in

---

[16] ORS 183.482(8)(a) provides that

"The court may affirm, reverse, or remand the [agency's] order. If the court finds that the agency has erroneously interpreted a provision of law and that a correct interpretation compels a particular action, the court shall:

"(A) Set aside or modify the order; or

"(B) Remand the case to the agency for further action under a correct interpretation of the provision of law."

the community or a similar community under the same or similar circumstances." *Creasey v. Hogan*, 292 Or 154, 163, 637 P2d 114 (1981) (footnote omitted) (malpractice claim against podiatrist); *see also Getchell v. Mansfield*, 260 Or 174, 179, 489 P2d 953 (1971) (recognizing that a professional acts negligently by failing to follow "the reasonable practice * * * in the community"). Whether professional "negligence" rises to the level of "gross negligence" is a question of degree. "Gross negligence is the equivalent of reckless disregard and is negligence of a substantially greater degree than that of ordinary negligence." *Fassett v. Santiam Loggers, Inc.*, 267 Or 505, 508, 517 P2d 1059 (1973). Fairly read, the board's rule-based formulations of "negligence" and "gross negligence" incorporate all or most of the well-established legal meanings of those terms, and give adequate notice of the sort of conduct that will lead to discipline by the board.

The foregoing conclusion aids in our analysis of whether the board's definitional rules reflect an error of law, but it does not squarely answer a remaining aspect of petitioner's challenge. Petitioner contends that the board erred by determining the meaning of the "pertinent community" element of negligence and, thus, the range of actions required by due care in this case, by considering expert testimony about the practice of geology in Marion County. The board's final order on reconsideration contained the following discussion of the 'pertinent community' in this case:

"[W]e first must determine the standard of care in the community at issue here: Marion County.

"* * * * *

"[I]t is beyond the authority of Marion County * * * to establish standards for the practice of geology. * * * * The legislature has specifically given that power to this Board. * * * Although the Board certainly has the power to establish statewide standards of care, as to which a registrant's failure to comply constitutes 'negligence,' the Board instead has defined 'negligence' with reference to the standard of care exercised in the pertinent 'community.' Consequently, there is no applicable 'board standard' here. Rather, the standard is established by expert testimony on a case-by-case basis."

Final Order on Reconsideration at 8 (citation omitted).

Petitioner argues that the board's determination of the "pertinent community" is inconsistent with the *Megdal* principle that a professional licensing board may not rely on expert testimony to determine the pertinent standard of care. In *Megdal*, the court held that the Board of Dental Examiners was required to make rules identifying ethical standards of professional conduct and could not rely on testimony of experts about how to formulate such standards. However, that determination stemmed from the court's conclusion that, by using the broad delegative phrase "unprofessional conduct," the legislature had required the Board of Dental Examiners to identify the ethical standards of the dental profession through administrative rules.

Unlike in *Megdal*, the board here *did* promulgate rules that accurately defined "negligence" and "gross negligence" before applying those terms during this adjudication. As noted, in disputes involving claims of professional negligence, parties routinely depend on expert testimony to establish the standard of reasonable care in the applicable community because, ordinarily, the factfinder otherwise would be unable to determine whether the conduct in question failed to satisfy the required standard of care. *Getchell*, 260 Or at 179; *see also Spray v. Bd. of Medical Examiners*, 50 Or App 311, 318, 320-21, 624 P2d 125 (1981) (implicit in the statutory standard of "inappropriate or unnecessary medical treatment" is the assumption that expert testimony may be used to "determine the standards of treatment that would be adhered to by the members of the medical community in any given case" because, for such a standard, "adoption of precise pre-decisional criteria" is not a feasible).

The foregoing discussion leads us to conclude that petitioner's reliance on *Megdal* is misplaced. The court's concern in that case—an agency's reliance, without prior rulemaking, on expert testimony to supply the meaning of a statutory ground for professional discipline—is not present here. In this case, the board's task consisted of applying the legislature's criteria for professional discipline, embodied in the standards of "negligence" and "gross negligence," and the board's administrative rules that accurately defined those terms. Consistent with the familiar legal meaning of professional negligence, the board's standard took into account any

distinctive elements of the practice of professional geology in the pertinent community. The board's consideration of expert testimony to explain that practice in the local community and, therefore, to apply the statutory disciplinary criteria and rule-based definitions, did not constitute an error of law.

■ As his final challenge to the board's order, petitioner submits that the board's findings regarding the pertinent standards of care are not supported by "substantial reason." Under ORS 183.470(2), an agency's order must contain findings of fact and conclusions of law. Because the order is the "instrument by which an agency demonstrates that a particular interpretation or application of a statute is within a generally expressed legislative policy," the agency's findings of facts and conclusions of law must be supported by "substantial reason." *Springfield Education Assn.*, 290 Or at 227. In *Ross*, the court explained that

> "[i]t is essential that an agency articulate in a contested case the rational connection between the facts and the legal conclusion it draws from them. This is required both for purposes of meaningful judicial review and to ensure that the agency gives responsible attention to its application of the statute."

294 Or at 370 (citations omitted).

■ Petitioner contends that the board's order is not supported by substantial reason because it does not specify the evidence on which the board relied to determine the relevant standards of care. Petitioner is mistaken. For each allegation of negligence or gross negligence against petitioner, the order describes relevant evidence presented at the hearing and, furthermore, connects the board's findings of fact based on that evidence with the pertinent conclusions of law that support the board's order. For each conclusion indicating that petitioner had violated the pertinent standard of care, the order rationally explains how the findings of fact support the conclusion. Our review indicates that the board's order exhibits the "substantial reason" that this court required in *Springfield Education Assn.* and *Ross*.

The decision of the Court of Appeals and the order of the Board of Geologist Examiners are affirmed.