IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Income Tax

RYAN FINLEY,                              )
                                         )
                 Plaintiff,              )     TC-MD 111135C
                                         )
         v.                              )
                                         )
DEPARTMENT OF REVENUE,                   )
State of Oregon,                         )
                                         )
                 Defendant.              )     **DECISION**

This matter is before the court on cross-motions for summary judgment. The filing of the

parties' motions and supporting memoranda was completed August 16, 2012, and oral argument

was held in Salem on September 17, 2012. Plaintiff was represented by Larry J. Brant and John

Rothermich, both of whom are attorneys at the law firm of Garvey Schubert Barer, Portland,

Oregon. Defendant was represented by Douglas M. Adair and James C. Wallace, Senior

Assistant Attorneys General, Oregon Department of Justice.

Plaintiff appeals Defendant's imposition of interest on underpayment of estimated tax for

the 2009 tax year, asserting that "Defendant should have used to the Prior Year Safe Harbor

Method to calculate the interest assessment for underpayment of Oregon estimated taxes." (Ptf's

Compl at 3, ¶ IX.) Plaintiff's 2008 Oregon return was not timely filed and Defendant relied on

its administrative rule to deny Plaintiff the benefits of the statutory safe harbor provision found

in ORS 316.587(8)(b).[1] (Def's Ans at 1-2; Def's Cross Mot for Summ J at 2.) In so doing

Defendant asserted an assessment of interest in the amount of $298,342.98, later reduced to

$224,863. (Ptf's Compl at 2-3, ¶¶ V, VIII; Def's Cross Mot for Summ J at 2.) Plaintiff contends

that the statutory safe harbor provision should apply and that the amount of interest should be

---

[1] All references to the Oregon Revised Statutes (ORS) are to 2007.

only $42,268. (Ptf's Compl at 3, ¶ IX; Ptf's Mem Supp Summ J at 17.) Plaintiff argues that Defendant's rule requiring the timely filing of the prior year's return is invalid because it conflicts with the plain language of ORS 316.587(8) and "creates a disparity between the application of the Prior Year Safe Harbor and its federal counterpart," which, Plaintiff asserts, contravenes the "clear legislative intent of the statute." (Ptf's Mem Supp Summ J at 2.)

## I. STATEMENT OF FACTS

Plaintiff 's memorandum in support of its request for summary judgment provides the following facts, which Defendant does not dispute. (Def's Cross-Mot for Summ J at 1: "The facts are not in dispute.") Plaintiff was an Oregon resident in 2008 and 2009. (Ptf's Mem Supp Summ J at 2.) Plaintiff filed his 2008 and 2009 Oregon individual tax returns on a calendar year basis. (*Id*. at 2-3.) Both returns were based on taxable years of 12 months. (*Id*. at 3.)

Plaintiff filed his 2008 Oregon return on February 12, 2010, reporting a tax liability of $2,153,260. (*Id*.) Eight months later, on or about October 15, 2010, Plaintiff filed his 2009 Oregon return reporting a tax liability of $9,928,537. (*Id*.) Plaintiff made Oregon estimated income tax payments for 2009 totaling $8,771,633.[2] (*Id*.)

On November 12, 2010, Defendant issued a Notice of Tax Assessment that included interest on underpayment of estimated tax in the amount of $298,342.98. (Aff of Robert P. Wiest, Ex 1 at 1.) Plaintiff, through his accountant Robert P. Wiest, CPA, sent two letters to Defendant in February and March 2011 disputing the interest assessment. (*Id*. at 2, ¶ 5.) The second of those two letters asserted that the imposition of interest for underpayment of estimated tax should be further reduced (from the amount asserted in the first letter from Wiest to

---

[2] It appears those payments were made as follows: $550,000 paid June 15, 2009, $417,974 paid January 15, 2010, $7,200,000 paid April 15, 2010, plus a payment of $603,659 applied to Plaintiff's 2009 tax liability based on an adjusted overpayment Plaintiff made on his 2008 tax liability. (*See* Aff of Robert P. Wiest at 1, Ex 1 at 2.)

Defendant) pursuant to ORS 316.587(8) because Plaintiff's estimated tax obligation for 2009 should have been determined under the safe harbor provisions of subsection (8)(b) of ORS 316.587. (*Id*.)

On July 14, 2011, Defendant issued a Notice of Abatement reducing the assessment of interest from $298,342.98 to $224,863. (*Id*., Ex 2 at 1.) According to Defendant's abatement notice, the reduction in the disputed interest (on underpayment of estimated tax) was due to an adjustment made to reflect the use of the 2008 tax rates. (*Id*., Ex 2 at 3.) Defendant declined to calculate the interest under the "safe harbor" method found in ORS 316.587(8), as requested by Plaintiff. (Id.) Defendant explained in that notice that "the prior-year return must have been filed timely, including extensions, and cover 12 months. The facts in your case do not qualify you for this method since your 2008 tax return was not filed until 2/12/10 which is after the extension period had expired. (ORS 316.587)." (*Id*.)

## II. ISSUE

The issue in this case is whether, for purposes of computing interest on underpayment of estimated taxes under ORS 316.587(1), a taxpayer can be required to timely file the prior year's return in order to rely on the statutory safe harbor provision in subsection (8)(b) of ORS 316.587 when calculating the amount of estimated taxes required to be paid in the current year.

The case is not about whether Plaintiff paid any estimated taxes in 2009, or whether his 2008 or 2009 Oregon personal income tax returns were timely filed. The case really comes down to whether the provision in the department's administrative rule (OAR 150-316.587 (8)-(A) (3)(a)(B)) requiring that a taxpayer timely file his tax return for the prior year in order to rely on the prior year's tax for purposes of determining the amount of estimated taxes paid in the

/ / /

current year (safe harbor) is consistent with the statute (ORS 316.587) and the intent of the legislature, or whether the rule is invalid, as Plaintiff asserts.

## III. ANALYSIS

A.    *Introduction and overview*

1.    *Statutory framework for declarations and payments of estimated tax*

Plaintiff was required by ORS 316.563(1), ORS 316.577, and ORS 316.579 to declare and pay estimated taxes in 2009 on income not subject to withholding. A declaration of estimated tax must be filed on or before April 15 of the current taxable year, which in this case was April 15, 2009. ORS 316.577 ("declarations of estimated tax required by ORS 316.563 (3) from individuals * * * shall be filed on or before April 15 of the taxable year"). Generally, estimated tax payments for the current year (in this case 2009) are due in quarterly installments by the fifteenth day of April, June, and September, of the current taxable year, with the fourth and final installment due on January 15 of the succeeding year. ORS 316.579(2); *cf.* IRC § 6654(c)(1).

If a taxpayer underpays his or her estimated taxes for any tax year, the taxpayer is required by ORS 316.587(1) to pay interest on the underpayment. Plaintiff underpaid his estimated taxes in 2009, and Defendant imposed interest on the underpayment. The parties dispute the amount of interest that Defendant can legally impose.

2.    *Focus*

ORS 316.587(8)(b) does not specifically require the prior year's return to be timely filed in order to qualify for safe harbor. The timely filing requirement appears only in Defendant's

/ / /

administrative rule, OAR 150-316.587(8)-(A)(3)(a)(B).[3]  Under the rule, the statutory safe harbor provision is only available to taxpayers whose prior year Oregon return is timely filed, including extensions, and Plaintiff's 2008 Oregon return was not timely filed.  The due date for the 2008 return was April 15, 2009, or October 15, 2009 (including the allowable extension), and Plaintiff did not file his 2008 return until February 12, 2010.

Plaintiff challenges the validity of the rule as contrary to the statute and legislative intent. Plaintiff contends that "[b]ecause the Administrative Rule conflicts with ORS 316.587(8), goes beyond the interstices of and overcomes and overrides the statute's provisions, and produces a result in contravention to federal law * * * the Administrative Rule is invalid to the extent it imposes the Timely Return Limitation." (Ptf's Mem Supp Summ J at 17.)  Accordingly, Plaintiff asks the court to grant its summary judgment motion and find that Plaintiff is only liable for $42,268 of interest for underpayment of estimated taxes for tax year 2009.  (*Id*.)  Defendant disagrees, contending that the disputed provision in the administrative rule provides a "reasonable interpretation that is consistent with the statute, administrative needs, and the ubiquitous requirements for timely filed returns."  (Def's Cross Mot for Summ J at 3.) Defendant insists that:

> "[s]tatutory analysis, including consideration of subsection (9)(a) [of the statute] and legislative history, support the provision of [OAR 150-316.587(8) (A)(3)(a)(B)] requiring that a prior year's return must be timely filed, including applicable extension.  Thus, the rule is valid and the department may rely on it."

(Def's Cross Mot for Summ J at 17.)

/ / /

/ / /

---

[3] The court's references to the Oregon Administrative Rules (OARs) are to those in effect in 2010. Practically speaking, the only relevant rule in this case is OAR 150-316.587(8)-(A)(3)(a)(B), and the timely filing requirement was part of the two latest rule revisions pertinent to this case: 2008 and 2011.

B.      *Interest on underpayment of estimated tax - the statute and rule*

As indicated above, the relevant statutory provision governing the imposition of interest is ORS 316.587. Subsection (1) of that statute provides for the imposition of the interest "for each month, or fraction thereof, on the amount underpaid for the period the estimated tax or any installment remains unpaid." Subsection (2) defines how the amount of underpayment is determined by reference to "the required installment." Subsection (8) defines the term "required installment," and explains the three alternative methods available for determining the amount to pay when estimated tax payments (i.e., installments) are required. The required installment is the lesser of the three available methods a taxpayer is entitled to utilize. ORS 316.587(8). Finally, subsection (9) addresses the treatment of amended returns, return adjustments made by the department "during initial processing," and includes a directive regarding consideration of section 6654 of the Internal Revenue Code (IRC). The dispute in this case centers primarily on subsections (8) and (9) of ORS 316.587, and Defendant's administrative rule, OAR 150-316.587 (8)-(A).

ORS 316.587 provides, in relevant part:

> "(8) For purposes of subsections (2) and (4) of this section [providing for the determination of the amount of any underpayment of estimated tax], the term 'required installment' means the amount of the installment that would be due if the estimated tax were equal to the lesser of:
>
> "(a) Ninety percent of the tax shown on the return for the taxable year (or, if no return is filed, 90 percent of the tax for such year);
>
> "(b) If the preceding taxable year was a taxable year of 12 months, the percentage of the tax shown on the *return filed by the individual for the preceding taxable year* that is established by the Department of Revenue by rule [100 percent]; or
>
> "(c) Ninety percent of the tax for the taxable year computed by placing on an annualized basis the taxable income for the months in the taxable year ending before the month in which the installment is required to be paid.

"(9) *For purposes of subsection (8)* of this section:

"(a) If an *amended return* is *filed on or before the return due date* (determined with regard to any extension of time granted to the taxpayer), then the term "return" means the amended return.[4]

"(b) if during initial processing of the return the department adjusts the amount of tax due, then the term 'tax shown on the return' means the tax as adjusted by the department. This paragraph shall not apply if it is ultimately determined that the adjustment was improper.

"(c) *The department shall consider the provisions of section 6654 of the Internal Revenue Code*." [5]

(Emphasis added.)

The disputed administrative rule provides in relevant part:

"(3) Determination of required annual payment amount.

"(a) The required annual payment is the lesser of:

"(A) Ninety percent of the tax shown on the return for the taxable year * * *; or

"(B) One hundred percent of the tax shown on the prior year's return, if qualified. This is sometimes referred to as 'safe harbor.' To use the prior year's tax to determine the required annual payment, *the prior year's return must have been a timely filed Oregon return*, including extensions, and the prior tax year must consist of 12 months."

OAR 150-316.587(8)-(A) (emphasis added).

/ / /

/ / /

---

[4] Subsection (9) was added to ORS 316.587 in 1993. Or Laws 1993, ch 726, § 35a. It was then that the legislature allowed an amended return to be considered a "return" for purposes of subsection (8) of the statute, provided the amended return was "filed on or before the return due date (determined without regard to extensions)[.]" The statute was subsequently amended in 2001 to allow the timeliness of an amended return to be gauged based on the due date of the [original] return "with" (as opposed to "without") regard to extension, effectively extending the deadline for purposes of the safe harbor provision to at least October 15. Or Laws 2001, ch 660, § 4.

[5] Paragraph (c) of subsection (9) of ORS 316.587 was added by the legislature in 1999 by House Bill 2137. Or Laws 1999, ch 90, § 18.

C.    *Court's analysis*

As indicated above, the question in this case ultimately comes down to whether or not the department's administrative rule is valid because the statute itself is silent as to timing for purposes of the safe harbor provision.

The parties agree that if this case cannot be resolved by the plain language of ORS 316.587(8), then commonly recognized rules of statutory construction apply. (Ptf's Mem Supp Summ J at 8; Def's Cross Mot for Summ J at 3-5; Ptf's Reply at 3-5.)  The parties also agree that the court's ultimate task is to determine the legislative intent behind ORS 316.587(8). (Ptf's Reply at 3; Ptf's Mem Supp Summ J at 7-8; Def's Cross Mot for Summ J at 3.)  Finally, they largely agree on the court's approach in determining the legislature's intent in enacting that statute. (*Compare* Ptf's Mem Supp Summ J at 8 *with* Def's Cross Mot for Summ J at 3.)  The first step is for the court to examine the text and context of the statute in question. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610, 859 P2d 1143 (1993) (*PGE*); *State v. Gaines*, 346 Or 160, 171-172, 206 P3d 1042 (2009) (*Gaines*).  The second step is to consider legislative history. *PGE*, 317 Or at 611-612; *Gaines*, 346 Or at 171-172.  If the first two steps do not resolve questions of legislative intent, Oregon courts apply "general maxims of statutory construction to aid in resolving the remaining uncertainty." *PGE*, 317 Or at 612; *Gaines*, 346 Or at 172.

The parties note that there are three categories of statutory terms providing direction to an administrative agency in terms of the agency's nature and scope of authority. (Def's Cross Mot for Summ J at 4-5; Ptf's Reply at 3.)  The three types of statutory terms are exact, inexact, and delegative. *Coffey v. Board of Geologist Examiners*, 348 Or 494, 508, 235 P3d 678 (2010) (citing *Springfield Education Assn. v. School Dist.*, 290 Or 217, 223, 621 P2d 547 (1980)

(*Springfield*)). Plaintiff insists that the court's focus should be on the word "return," and that that term is an "exact" term, while Defendant insists that the term "return filed by the individual for the preceding tax year" is the operative language of the statute, and that that term is an "inexact" term. (Ptf's Reply at 3; Def's Cross Mot for Summ J at 4.)

An "exact" term is one which "impart[s] relatively precise meaning," whereas an "inexact" term is "less precise." *Springfield*, 290 Or at 223-224. The court finds that the relevant portion of the disputed statutory provision in ORS 316.587(8)(b) is "return filed by the individual for the preceding taxable year," and that the phrase is "inexact." The court in *Springfield* explained:

> "To determine the intended meaning of inexact statutory terms, in cases where their applicability may be questionable, courts tend to look to extrinsic indicators such as the context of the statutory term, legislative history, a cornucopia of rules of construction, and their own intuitive sense of the meaning which legislators probably intended to communicate by use of the particular word or phrase."

290 Or at 224. The court then went on to state that "[i]n any event, however, the inquiry remains the same: what did the legislature intend by using the term." (*Id.*)

Clearly, subsection (8) does not expressly require that the prior year's return be timely filed. The relevant portion of ORS 316.587(8) entitles a taxpayer to pay estimated taxes for the current year based on "the percentage of the tax shown *on the return filed by the individual for the preceding taxable year* that is established by the Department of Revenue by rule[.]" On that much, the parties agree, although Defendant hedges its concession, stating that "subsection (8)(b) is silent as to timing, and, taken in isolation, *could* be read as neutral on the issue." (Def's Cross Mot for Summ J at 6 (emphasis added).)

Plaintiff asserts that that is the end of the matter because, as explained above, Plaintiff satisfies the three specific requirements in the statute, and the statute does not require that the

prior year's return be timely filed. Defendant insists that Plaintiff is not entitled to rely on the prior year's tax as a safe harbor for the amount of estimated tax payments because its administrative rule, OAR 150-316.587(8)-(A)(3)(a)(B), requires that the prior return be timely filed. The court agrees.

ORS 316.587 was enacted in 1980 as a one-time mechanism for increasing revenues at a time when the state was in the throes of an economic recession. Then-Governor Vic Atiyeh called a special session of the legislature to address "worse than projected economic conditions[.]" (Def's Ex B at 2.) The governor explained in a memorandum written to state agency heads that he had recommended to the legislative emergency board a combination of budget cuts and increased revenues, including a projected $101 million through the enactment of the estimated tax program and stepped-up tax collection efforts. (*Id.* at 7-8.) Notably, the governor indicated that he was recommending that the legislature "institute programs to require timely payment of taxes." (*Id.* at 7.) The governor noted in that memorandum that although 90 percent of the State's taxpayers pay their income taxes through withholding on a pay-as-you-go basis, there was no withholding on dividend and interest income, and that, as a result, "some taxpayers postpone payment until the end of the year." (*Id.*)

The result was House Bill 3183. (Ptf's Mem Supp Summ J at 11-12; Def's Cross Mot for Summ J at 9; Def's Ex A.) That bill, which became ORS 316.587, originally provided for the filing of a declaration of estimated tax in 1981 on or before April 15 of that year, two equal payments of estimated tax, the first on April 15, 1981, and the second three months later on June 15, 1981, and interest on any underpayment of estimated tax. (Def's Ex A at 2-3, §§ 10a, 15a(2), 22(1).)

/ / /

Applying accepted rules of statutory construction does not adequately answer the question of whether Defendant's rule is valid or invalid. While it is true that rules of statutory construction include the enjoinder not to insert words that have been omitted, the court, in upholding Defendant's rule, is not inserting a word in the statute. Rather, it is merely recognizing and sanctioning the validity of the department's rule, which was written to help clarify the statute. The rule was promulgated to clarify how estimated tax payments are determined for purposes of the imposition of interest on any unpaid estimated taxes. *See* OAR 150-316.587(8)-(A). Such clarification was needed because the operative phrase in the statute imposing interest on underpayment of estimated taxes, ORS 316.587, is unclear in at least one respect: subsection (8)(b) of the statute provides a method for determining the percentage of the tax on an underpayment based on "the tax shown on the return filed by the individual for the preceding taxable year." The parties in this case disagree as to the meaning of the word "return" or the phrase containing that term, "return filed by the individual for the preceding taxable year."

A brief review of the interest statute is helpful at this juncture. ORS 316.587(1) requires the imposition of interest on an underpayment of estimated tax based "on the amount underpaid for the period the estimated tax or any installment remains unpaid." Subsection (2) of that statute provides a formula for determining the amount of any underpayment. It is "the excess of the required installment over the amount (if any) of the installment paid on or before the due date for the installment." ORS 316.587(2). Finally, subsections (3) and (4) provide a method for determining the period of underpayment and the order in which estimated payments are credited against required unpaid installments. ORS 316.587(3), (4). Those provisions are fairly straightforward in terms of meaning, and are not in dispute in this case.

/ / /

The dispute arises out of subsection (8) of ORS 316.587, which provides three alternative methods for calculating estimated taxes and the "required installment[s]." ORS 316.587(8) also provides that the estimated tax is "equal to the lesser of [the three methods]." Plaintiff relies on the second of the three methods, commonly referred to as the "safe harbor." It is a safe harbor because it enables the taxpayer to determine the tax due for the current year (i.e., the estimated tax) by relying on the prior year's tax, which gives the taxpayer a precise number to work with and affords "protection" where annual income fluctuates, especially where, as here, current year income greatly exceeds income from the prior year. The statute, as has been noted, allows the taxpayer to rely on "the tax shown on the return filed by the individual for the preceding taxable year." ORS 316.587(8)(b). The statute, however, does not state when the prior year's return must be filed in order for a taxpayer to rely on it in estimating taxes for the current year, or more importantly, reducing or avoiding the imposition of interest on an asserted underpayment. The applicable rule, OAR 150-316.587(8)-(A)(3)(a)(B), requires that "the prior year's return must have been a timely filed Oregon return, including extensions[.]"

Defendant correctly argued at the hearing on the motions that, without some sort of deadline for the filing of the prior year's return, a taxpayer could conceivably wait several years before filing that return. And, if none or only some of the required estimated tax payments are timely paid for a given year (the "current" year), in contravention of ORS 316.579, then under Plaintiff's rationale, the calculation of interest could nonetheless be based on that considerably untimely prior year's return. In some cases, including the present matter, that results in a greatly reduced estimated tax to use in determining the interest Defendant must impose on the underpayments for the current year. That would occur in any case where the tax for the prior year is less than the tax for the current year (because income differs greatly between the two

years).  This case provides a perfect example; Plaintiff's income was considerably higher in 2008 than 2007.

Contrary to Plaintiff's assertions, Defendant's rule does not conflict with the statute, which would be prohibited by *Garrison v. Department of Revenue*, 345 Or 544, 548-49, 200 P3d 126 (2008) (citations omitted), nor does it overcome and override the statute's provisions by going farther than filling in the interstices of ORS 316.587(8), in violation of *Gouge v. David*, 185 Or 437, 464, 202 P2d 489 (1949).  (*Contra* Ptf's Mem Supp Summ J at 6-7.)  The statute leaves unanswered when the prior year's return must be filed and Defendant has promulgated a reasonable rule to resolve that question.  Thus under the established framework for discerning legislative intent when reviewing the validity of a rule, Defendant's rule does not conflict with the statute.  In the court's "own intuitive sense of the meaning which [the] legislators probably intended to communicate" by the statute, *Springfield*, 290 Or at 224, Defendant's rule brings clarity and reason to a poorly worded statute.  It certainly does not overcome or override the statute's provision or the apparent underlying legislative intent.

The court also rejects Plaintiff's assertion that the context of ORS 316.587(8) demonstrates that there was never a legislative intent to make the prior year safe harbor limitation conditional upon timely filing the prior year's return.  (Ptf's Mem Supp Summ J at 9.)  As Defendant notes in its cross-motion, "ORS 316.587(9)(a) includes provisions that limit reliance on amended returns to those returns filed by the due date including allowable extension. * * * [T]here is no question that the legislature intended that the timing of returns be considered."  (Def's Cross Mot for Summ J at 3.)  The court agrees that "[t]he very nature of the estimated tax payment scheme including the safe harbor provisions requires that there be some limitation on the timing of returns," that "the issue of timing constitutes an inexact term that is

subject to reasonable interpretation by the department," and that Defendant's administrative rule "provides a reasonable interpretation that is consistent with the statute, administrative needs, and the ubiquitous requirements for timely filed returns." (*Id*.)

Additionally, the fact that the legislature amended the statute in 1993 to include the provision in paragraph (a) of ORS 316.587(9) that limits reliance on amended returns to those returns filed by the prior year's return due date if they are to be considered a "return" for purposes of subsection (8), including the safe harbor provision in subsection (8)(b), supports the conclusion that original returns must also be timely filed. Under that provision, an amended return filed within the time for a regular return replaces the original return. If the amended return is limited to the filing deadline applicable to a regular return, "no purpose is served by allowing a regular return to establish a 'safe harbor' if it is filed after the filing period." (Def's Cross Mot for Summ J at 7.)

Plaintiff argues that Defendant was not given authority by the legislature to enact the disputed rule requiring timely filing for purposes of the safe harbor provision in ORS 316.587. While there may not be specific authority in that statute, the legislature gave the Oregon Department of Revenue broad rulemaking authority. *See generally* ORS 305.100.

Moreover, contrary to Plaintiff's contention, the fact that the legislature in 1999 expressly authorized Defendant to establish the applicable percentage of tax shown on the prior year's return for determining estimated taxes for the current year, but did not also expressly grant Defendant the authority to determine if or when the "return filed by the individual for the preceding taxable year" had to be filed in order to qualify for the safe harbor, does not mean that the legislature did not intend for Defendant to explain that term. (*Contra* Ptf's Mem Supp Summ J at 9-10.) Plaintiff argues that "[p]ursuant to ORS 316.587(9)(c), when establishing the

Applicable Percentage, Defendant is *required* to 'consider the provisions of section 6654 of the Internal Revenue Code,' " and that neither that code section nor the applicable treasury regulations "require a taxpayer to timely file a prior year return to qualify for the federal prior year safe harbor." (Ptf's Mem Supp Summ J at 9-10) (emphasis in original). As Defendant notes, "there was never a legislative intent to tie directly to such federal law as is the case with Oregon's ties to federal law related to the determination of taxable income." (Def's Cross Mot for Summ J at 2.) The 1999 amendments introduced as part of House Bill 2137 involved a different subject than the returns themselves. (Def's Cross Mot for Summ J at 10.) In 1999 both Defendant and outside practitioners were aware that the federal percentage applicable to the safe harbor was changing annually and HB 2137 gave Defendant the discretion to tie to those changes by rule. (*Id.*; *see also* Decl of Lauren Rauch at 6-9, ¶¶ 21-23.) Defendant chose to keep the percentage at 100 percent, which was the same percentage used by the federal government for many years. (Ptf's Mem Supp Summ J at 9.) HB 2137 added the new subsection (9)(c) to ORS 316.587, directing the department to "consider" section 6654 of the IRC when establishing the Oregon percentage for the prior year safe harbor provision in subsection (8)(b). There was no intent for the department to consider that section for any purpose other than to set the applicable percentage of the prior year's tax to be used as a safe harbor. ORS 316.587(9)(c) ("For purposes of subsection (8) of this section * * * [t]he department shall consider the provisions of section 6654 of the Internal Revenue Code."). Consequently, federal determinations are not relevant to the analysis of Oregon's estimated tax payment regime addressing the consequences for underpaying estimated taxes, found in ORS 316.587.

Finally, the court rejects Plaintiff's arguments about legislative history confirming lack of intent to make the prior year safe harbor limitation conditional upon timely filing the prior return.

(Ptf's Mem Supp Summ J at 11-16.) Although Plaintiff is correct in noting that "the Oregon estimated tax regime was 'modeled after the current federal estimated tax law[,]' " the legislative enactment and subsequent amendments never required Defendant to tie Oregon's estimated tax payment regime to the federal one. More importantly, the court does not believe the legislature ever intended to preclude Defendant from clarifying what a "return filed * * * for the preceding tax year" was for purposes of the safe harbor provision found in ORS 316.587(8)(b).

Again, ORS 316.563 requires certain taxpayers to "declare" estimated taxes and ORS 316.579 sets forth the timelines for payment. ORS 316.587 only addresses interest on underpayments of estimated taxes. The taxpayer desiring to pay estimated taxes for the current year based on the prior year's tax liability in order to avoid interest charges must, under the statute and administrative rule, timely file the return for the prior year or suffer the consequences for failing to do so.

III. CONCLUSION

The court concludes that Defendant's administrative rule, which imposes a timely filing requirement on reliance on the statutory safe harbor provision ORS 316.587 (8) (b), is not invalid; it does not conflict with the statute and is not contrary to legislative intent. Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiff's Motion for Summary Judgment is denied;

/ / /

/ / /

/ / /

/ / /

IT IS FURTHER DECIDED that Defendant's Cross Motion for Summary Judgment is granted.

Dated this ____ day of November 2012.

DAN ROBINSON
MAGISTRATE

*If you want to appeal this Decision, file a Complaint in the Regular Division of the Oregon Tax Court, by <u>mailing</u> to: 1163 State Street, Salem, OR 97301-2563; or by <u>hand delivery</u> to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your Complaint must be submitted within <u>60</u> days after the date of the Decision or this Decision becomes final and cannot be changed.*

*This document was signed by Magistrate Dan Robinson on November 15, 2012. The Court filed and entered this document on November 15, 2012.*