Argued and submitted December 6, 2013, affirmed April 22, 2015

Kenneth GUSTAFSON, CPA,
*Petitioner,*

*v.*

BOARD OF ACCOUNTANCY,
*Respondent.*

Board of Accountancy
09116CNK; A150473

348 P3d 343

Roy Pulvers argued the cause for petitioner. With him on the briefs were Allison D. Rhodes, Benjamin P. O'Glasser, and Hinshaw & Culbertson, LLP.

Judy C. Lucas, Senior Assistant Attorney General, argued the cause for respondent. With her on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Ortega, Presiding Judge, and Duncan, Judge, and DeVore, Judge.

ORTEGA, P. J.

## ORTEGA, P. J.

Petitioner seeks judicial review of a final order of the Oregon Board of Accountancy that suspended petitioner's certified public accountant (CPA) license for two years and ordered petitioner to pay a civil penalty of $5,000 and the board's contested case costs of $31,768. In his first assignment of error, petitioner asks us to remand the board's order, asserting that the board's failure to provide petitioner or the administrative law judge (ALJ) with the board's prior unpublished orders in disciplinary cases constituted "unexplained procedural irregularities" that "impaired the fairness" of the board's proceedings. Alternatively, he contends that the board's actions were an abuse of discretion because, without adequate explanation, the board (1) failed to comply with its own rules regarding document production and (2) relied on "unpublished, unproduced, and unreferenced prior orders as its basis for rejecting the ALJ's Proposed Order." In his second assignment of error, petitioner argues that the board impermissibly assessed the costs of the contested case hearing against him. We reject petitioner's second assignment of error without further discussion, and, because we conclude that petitioner's first assignment is without merit, affirm.

We begin with the board's factual findings, which petitioner does not challenge. *See Coffey v. Board of Geologist Examiners*, 348 Or 494, 496 n 1, 235 P3d 678 (2010) (where the factual findings of the board are not challenged, those findings are the facts for the purposes of judicial review). Petitioner has been a CPA since 1985 and has never previously been disciplined by the board. In 2007, petitioner agreed to assist the Fowlers and their various mortgage brokerage companies[1] with income and payroll tax issues. At the time, the Fowlers' most pressing issue involved problems with payroll tax filings, including unfiled, misfiled, and late tax returns. Petitioner did not have a written fee agreement with the Fowlers, who experienced severe financial difficulties in late 2007 and early 2008. Those difficulties required a significant amount of accounting work so

---

[1] For ease of reference, we refer to the Fowlers and their business entities collectively as "the Fowlers" unless the context requires otherwise.

that their corporate attorney could complete related legal work. However, the Fowlers failed to keep current in paying petitioner or their corporate attorney. The parties met in March 2008 to discuss business strategies associated with winding down one of the Fowlers' business entities and, at the end of that meeting, they discussed options for ensuring that petitioner and the Fowlers' attorney would be paid for past and future work. At that meeting, the Fowlers agreed to consider a proposal to execute lien documents in favor of petitioner and their attorney. However, shortly thereafter, the Fowlers rejected that proposal. At the time, the Fowlers were in dire financial straits and were waiting on an anticipated tax refund to pay off some of their many creditors.

In August 2009, petitioner received a refund check payable to the Fowlers from the Internal Revenue Service (IRS) for $103,632.12. Petitioner did not contact the Fowlers; instead, he had his staff negotiate the check without the Fowlers' signature and deposit it in his firm's bank account. Two weeks later, petitioner sent the Fowlers an invoice that reflected that he had "received" $65,778.57 for past-due amounts, and enclosed a check for the "overpayment" of $37,853.55. The Fowlers immediately e-mailed petitioner seeking clarification of the invoice. Petitioner informed them that he had received their refund and had "applied it against our bills." The Fowlers strenuously objected to petitioner's actions, asserting that they had never authorized him to receive and negotiate the refund check.

As a result of petitioner's actions, the Fowlers filed complaints with the IRS, the United States Attorney's Office, and the board. The U.S. Attorney declined to pursue criminal charges against petitioner, and the IRS issued a written reprimand after concluding that petitioner had violated IRS Circular 230 by endorsing and depositing the check.

The board, in response to the Fowlers' complaint and the board's initial investigation, issued a notice to petitioner proposing to suspend petitioner's CPA license for three years for professional misconduct under ORS 673.170(1)(f)[2]

---

[2] ORS 673.170(1)(f) provides that the board may "[r]evoke, suspend, refuse to renew or refuse to issue any registration issued under ORS 673.160."

and OAR 801-030-0020(1)(a), (b),[3] and assess a civil penalty of $5,000 and costs of the disciplinary proceeding. Petitioner requested a contested case hearing, and the board referred the hearing request to the Office of Administrative Hearings (OAH). The OAH assigned the case to an ALJ, who held a contested case hearing.

At the hearing, petitioner admitted that, by negotiating the refund check and depositing it in his firm's bank account, he had violated the board's standards of professional conduct. However, he disputed that his actions were taken in bad faith. He argued that, through informal communications with the Fowlers, he had formed a good-faith belief that the Fowlers would pay his fees from their anticipated tax refund. The board countered that, considering the totality of the circumstances and the documented communications between the parties, it was unreasonable for petitioner to form that belief and that, despite numerous opportunities, petitioner had failed to confirm that belief with the Fowlers. The board contended that petitioner acted out of self-interest to ensure that his bills were paid before those of other creditors, and that petitioner's actions violated his ethical duties to his clients.

During closing arguments, the central question addressed by the parties was how to quantify the seriousness of petitioner's misconduct and the appropriate sanction for that misconduct. The board's attorney argued that petitioner should receive a substantial sanction because his conduct was egregious and had "significant impact" on the Fowlers. Petitioner contended that, although his actions violated the professional standards, the Fowlers had misled him into believing that he would be paid from the tax refund. Petitioner also argued that the evidence

---

[3] OAR 801-030-0020(1)(a) provides that "[a] licensee shall not commit any act or engage in any conduct that reflects adversely on the licensee's fitness to practice public accountancy."

OAR 801-030-0020(1)(b) states:

"Professional misconduct may be established by reference to acts or conduct that would cause a reasonable person to have substantial doubts about the individual's honesty, fairness and respect for the rights of others or for the laws of the state and the Nation. The acts or conduct in question must be rationally connected to the person's fitness to practice public accountancy."

did not support the Fowlers' claims that his actions had significantly harmed them. Accordingly, petitioner asserted that, although he should not have negotiated the Fowlers' check, given his good-faith belief that he was authorized to do so, the ALJ should recommend a reprimand. To support his argument that reprimand was a sufficient sanction, petitioner relied on attorney discipline cases that had involved violations of fiduciary duties. He also explained that, based on his research of the board's other disciplinary cases, the board's proposed three-year suspension was extreme.

After the hearing, the ALJ issued a proposed order concluding that petitioner had committed professional misconduct and recommending that he be suspended for 60 days and pay a $5,000 civil penalty and the board's costs. In explaining that recommendation, the ALJ noted that petitioner's violation was "serious," but concluded that a three-year suspension was not warranted. The ALJ cited cases identified by petitioner that had resulted in shorter suspensions by the board, as well as two cases in which the board had suspended a CPA for three years for what the ALJ characterized as more serious violations, and also noted that attorneys who had engaged in similar conduct had faced less severe sanctions from the Oregon Supreme Court.

Thereafter, the board issued a final order in which it adopted much of the ALJ's proposed order but rejected the ALJ's recommendation of a 60-day suspension. The board concluded that, in light of the seriousness of petitioner's misconduct and the effect it had on the Fowlers, petitioner's license should be suspended for two years. The board also assessed a $5,000 civil penalty and the costs of the disciplinary proceeding.

In its final order, the board described at length its rationale for imposing a two-year suspension. First, it explained that, at several different junctures during petitioner's representation of the Fowlers, he had had the opportunity to clearly establish what services he would be providing and how he would be paid, yet he continually failed to do that. The board discredited petitioner's claim that he had acted with a good-faith belief that his negotiation of the

Fowlers' refund check was authorized by them. Instead, the board concluded that petitioner, in violation of his ethical obligations, put his own interest in receiving full payment ahead of the Fowlers' other creditors and the Fowlers' interest in how best to use their refund. The board explained that that conduct "constitutes a serious breach of [petitioner's] professional responsibilities and weighs in favor of imposing a lengthy suspension" of his license.

The board determined that, although the Fowlers eventually received their full refund about a year after petitioner negotiated the original refund check, petitioner's actions caused them severe emotional distress and may have caused the Fowlers to lose an opportunity to obtain a loan modification from the lender on their personal residence. The board characterized the harm to the Fowlers as supporting its determination that petitioner had committed a "serious violation" that justified a two-year suspension.

Further, the board also explained why it disagreed with the ALJ's 60-day suspension recommendation. Specifically, the board noted that the ALJ relied primarily on attorney-discipline cases to recommend a 60-day suspension, but the board concluded that, "in addition to the specific facts in this matter, a review of recent Board precedent also supports [the two-year suspension]." The board explained that it has "consistently revoked the permit of persons who embezzle funds (*i.e.*, take funds to which they are not entitled)." The board cited the names of six CPAs who had had their licenses revoked for taking funds from employers or clients for personal use. Moreover, the board stated that "[o]ther acts of dishonesty have netted the permit holder multi-year suspensions," citing incidents in which CPAs received three-year suspensions for making false applications to obtain multiple hunting tags, making unsupported journal entries to offset understated account balances in a company's financial books, or holding oneself out as a CPA when on inactive status. The board further explained that "the penalty imposed becomes harsher when clients are affected," and referenced an instance in which a CPA suffered severe sanctions for engaging in conduct that financially harmed his client.

The board also noted that the ALJ's reliance on attorney-discipline cases was misplaced because law and accounting are "not interchangeable disciplines." Nevertheless, the board concluded that to the extent attorney-discipline cases were persuasive, those cases recognized that the conversion of a client's funds to the professional's own use merits serious discipline, including disbarment.

In conclusion, the board determined that, given the totality of the circumstances, petitioner purposefully acted to "ensure that his entire bill would be paid, regardless of the impact his action may have on his clients. As such, a lengthy suspension is warranted."

Petitioner asserts that the board erred in suspending his license for two years. Petitioner offers two arguments in support of that assertion. First, petitioner contends that "the fairness of the proceedings was impaired by procedural irregularities."[4] Alternatively, petitioner argues that the board's order constituted an abuse of discretion because it was issued "without explanation, in a manner inconsistent with agency rules and prior agency practice."[5] The crux of both arguments is that the board impermissibly failed to provide petitioner or the ALJ with copies of the board's prior disciplinary orders on which the board relied in the final order to support a two-year suspension. That is, the board's failure to provide those orders "impaired the fairness of the proceedings," or constituted an abuse of discretion.

Addressing those assertions requires an examination of petitioner's attempts to obtain the board's prior disciplinary orders. After the board made a preliminary finding that petitioner had violated OAR 801-030-0020(1)(a) and (b),

_____

[4] Petitioner relies on ORS 183.482(7), which provides, in part:

"The court shall remand the order for further agency action if the court finds that either the fairness of the proceedings or the correctness of the action may have been impaired by a material error in procedure or a failure to follow prescribed procedure, including a failure by the presiding officer to comply with the requirements of ORS 183.417(8)."

[5] Petitioner's abuse of discretion argument is based on ORS 183.482(8)(b)(A), which requires a remand if the agency's exercise of discretion is "[i]nconsistent with an agency rule, an officially stated agency position, or a prior agency practice, if the inconsistency is not explained by the agency[.]"

it issued a notice proposing a three-year suspension. Petitioner received e-mail correspondence from the board's executive director that indicated that the proposed three-year suspension was based on "other cases." Petitioner sent a letter to the board's attorney requesting "information that will assist us in determining how similarly situated accountants have been dealt with in the past, [and] perhaps we can avoid the frustration of a FOIA." The board's attorney responded with a letter that indicated that, although the board was not subject to the federal Freedom of Information Act, petitioner was welcome to seek information under a public records request, and explained that, "because the board is considering the adoption of a penalty matrix system by rule, I understand a sanction summary of some type may have been compiled. We are happy to provide you a copy of the summary upon request." Petitioner responded with a request for the "summary associated with the matrix project" and asked the board to be more specific as to the "cases" on which it was relying to support its proposed sanction. In a telephone discussion, the board's attorney mentioned a few case names that the board's executive director "may have been referring to."

The board provided its penalty "matrix" to petitioner in October 2010.[6] The matrix included a section setting out general categories of violations, the corresponding administrative rule or statutory section, and the range of sanctions authorized by statute or rule for each. It also included a table that indicated previous discipline imposed for violations of specific rules and statutes, as well as the "newsletter date" for each.[7] The table did not include names of the licensees who had been disciplined.

Later, after the case had been referred to the OAH, petitioner sent a formal discovery request to the board seeking, among other information, "Board minutes, complaint committee minutes, and final orders of discipline in any matters of discipline of other licensees that the agency intends

---

[6] The matrix is formally labeled as the board's "Guidelines for Disciplinary Sanctions."

[7] The board occasionally publishes "newsletters" that include short descriptions of disciplinary cases. However, the parties appear to agree that not all of the newsletters are publically available on the board's website.

to rely upon in [its] sanctioning recommendation before the ALJ." In response to that request, the board asserted:

> "In disciplinary matters in which a sanction must be imposed, the Board is guided by the actions taken in all previous disciplinary matters to determine the appropriate sanction and the facts of the case at issue. To supply you with a copy of all Board minutes, Complaint Committee Minutes and Final Orders during which a possible disciplinary action was discussed would impose an undue burden and expense on the Board, therefore the Board objects to this Request."

Petitioner did not further pursue its discovery request after the board's objection. The contested case hearing was held in March 2011.

To recap, petitioner now argues that the fairness of the proceedings was impaired by procedural irregularities, necessitating a remand under ORS 183.482(7). Alternatively, he contends that the same procedural irregularities constituted an abuse of discretion, requiring reversal under ORS 183.482(8).

Petitioner first argues that the board's failure to comply with the statutes and rules governing production of information impaired the fairness of the entire proceedings. He claims that, because the board failed to provide the prior disciplinary orders on which the board ultimately relied, the board deprived him of the ability to meaningfully respond to the board's sanction proposal, which, according to petitioner, was the central issue of the contested case hearing. Petitioner points out that, under the administrative rules that govern contested cases before the OAH, discovery requests may be made for items that are "reasonably likely to produce information that is generally relevant and necessary to the case." *See* OAR 137-003-0567. Petitioner also claims that the penalty matrix provided by the board did not "insulate the procedural irregularity from impairing fairness" because it did not provide enough useful information and did not cover the entire time period that the board considered when imposing petitioner's sanction.

We reject that argument because petitioner does not identify how the board neglected to comply with a

procedural statute or rule. The parties engaged in a discovery process that is authorized in contested cases: Petitioner informally sought the board's prior orders, and the board provided the penalty matrix. Petitioner later submitted a formal, albeit broad, discovery request, to the board seeking its minutes and final orders in disciplinary cases and, when the board objected to that request as unduly burdensome, petitioner did not press the issue further. *See* OAR 137-003-0568 (authorizing the filing of a motion for an order requiring discovery). Petitioner has not explained how the board's response to his discovery requests was procedurally flawed, other than to broadly assert that the board failed to "meaningfully respond." We disagree. The board provided a penalty matrix in response to petitioner's informal requests, and responded with an objection to petitioner's formal request for prior disciplinary orders. Petitioner has not identified a procedural irregularity that necessitates a remand under ORS 183.482(7).

Petitioner takes a slightly different approach in his second argument. He argues that the board's actions prevented him from adequately defending against the board's sanction because the board did not identify the prior disciplinary orders on which it relied until after the contested case hearing. Petitioner explains that the board did not cite to any specific prior disciplinary orders at the contested case hearing. Accordingly, he contends that the board's reliance on "material" (*i.e.*, the prior board orders) that was not presented to the ALJ violates the administrative law "principle of exclusivity." According to petitioner, an agency cannot engage in off-the-record analysis about a pending case because it violates transparency requirements. He complains that the board's reliance on its prior orders for the first time in the final order was a "procedural irregularity" that deprived him of a fair proceeding, and that the board's actions preclude any meaningful judicial scrutiny of the board's final order.

We are not persuaded. Petitioner's argument rests on the premise that, after a contested case hearing in which it is determined that a licensed accountant committed professional misconduct, the board cannot impose a sanction that falls within the statutorily authorized range of sanctions

for that misconduct without having identified and provided prior disciplinary orders in similar cases at the contested case hearing. That is, we understand petitioner to argue that, as a matter of procedure, the board must, in deciding to impose a sanction, provide the ALJ and the licensee with prior orders in cases involving similar conduct. Even assuming that the contested case discovery procedures required the board to provide petitioner with the prior disciplinary orders on which it intended to rely, we cannot conclude that there were procedural irregularities in this case because petitioner failed to take advantage of the procedures available to him in the face of the board's objection to his discovery request. And, outside of the discovery process, petitioner does not point to, and we are not aware of, any authority that would require the board to furnish that information as a matter of course.

Petitioner's reliance on the "principle of exclusivity" is also unavailing. That principle extends to issues involving the exclusivity of the evidentiary record, *see Samuel v. Board of Chiropractic Examiners*, 77 Or App 53, 712 P2d 132 (1985), *rev den*, 300 Or 704 (1986), and we are not convinced that the board's prior disciplinary orders fall within that restriction. Our decision in *Samuel*, on which petitioner relies, involved *ex parte* communications that were not disclosed in the administrative record. The circumstances here are distinguishable. Here, petitioner takes issue with the board selecting an appropriate sanction by relying in part on its prior orders in disciplinary matters—orders that were not placed in the administrative record. Nothing precludes the board from relying on its own knowledge of its prior decisions without placing those prior decisions in the evidentiary record.

Petitioner also contends that the board's final order constitutes an abuse of discretion because it was issued "without explanation, in a manner inconsistent with agency rules and prior agency practice." *See* ORS 183.482(8)(b)(B) (requiring remand to the agency when the agency's exercise of discretion is "[i]nconsistent with an agency rule, an officially stated agency position, or a prior agency practice, if the inconsistency is not explained by the agency"). Petitioner argues that the board did not comply with its own

requirements for document production, citing to OAR 137-003-0025(5). Given our prior discussion regarding the discovery process in this case, and petitioner's failure to take full advantage of the procedures available to him, we reject that argument without further discussion.

He also contends that the board abused its discretion because it (1) failed to explain why it "effectively excised" the ALJ from the contested case process by rejecting the ALJ's recommendations on the basis of "previously undisclosed information," and (2) "limit[ed] access to its prior orders for those who most need access." It is within the board's authority to modify the ALJ's proposed order, as long as those modifications are adequately explained. *See generally* ORS 183.650. Petitioner has not persuaded us that, in the circumstances of this case, the board's action of modifying the ALJ's sanction recommendation without presenting prior disciplinary orders to the ALJ was an abuse of discretion.

Affirmed.